# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-02-00661-CV

**In re the Commitment of William P. Browning**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY,[1] 250TH JUDICIAL DISTRICT NO. 01-0805024-CV, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING**

## O P I N I O N

William P. Browning was civilly committed as a sexually violent predator pursuant to title 11, chapter 841 of the health and safety code. *See* Tex. Health & Safety Code Ann. §§ 841.001-.147 (West 2003). A jury found that Browning suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. The trial court entered a final judgment and order of civil commitment. Browning appeals, claiming the commitment proceedings

---

[1] The order of civil commitment was signed by the Honorable Lee G. Alworth of the 284th District Court in Montgomery County. Pursuant to statute, jurisdiction over the cause was immediately transferred to the district courts of Travis County, the county in which William Browning will reside. *See* Tex. Health & Safety Code Ann. § 841.082(c) (West 2003). The notice of appeal was originally filed with the Travis County district clerk, who forwarded the notice to the Court of Appeals for the Ninth District, which includes Montgomery County in its jurisdiction. *See* Tex. Gov't Code Ann. § 22.201(j) (West 1998). The clerk presumably made this choice because the order under review was signed by a Montgomery County district judge. The supreme court, however, transferred the appeal to this Court because the Travis County district court has had jurisdiction since the transfer of the case; Travis County is within this Court's jurisdiction. *See id.* § 22.201(d) (West 1998).

established by the statute are punitive rather than civil in nature. He reasons that his commitment is therefore invalid because he was denied several constitutional safeguards attendant to a criminal prosecution. Because we find the statute to be civil in nature, we affirm the district court's final judgment and order of civil commitment.

## BACKGROUND

*The Civil Commitment Statute*

In 1999, the legislature amended the health and safety code and enacted chapter 841—a statutory scheme for the civil commitment of sexually violent predators. Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4143-52 (codified at Tex. Health & Safety Code Ann. §§ 841.001-.147). The first section of chapter 841—entitled Legislative Findings—states:

> The legislature finds that a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. The legislature finds that the existing involuntary commitment provisions of Subtitle C, Title 7, are inadequate to address the risk of repeated predatory behavior that sexually violent predators pose to society. The legislature further finds that treatment modalities for sexually violent predators are different from the traditional treatment modalities for persons appropriate for involuntary commitment under Subtitle C, Title 7. Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.

Tex. Health & Safety Code Ann. § 841.001. The remainder of chapter 841 sets out, in detail, a civil-commitment procedure for sexually violent predators. *See generally id.* §§ 841.002-.147.

A sexually violent predator is defined as a person who both (1) is a repeat sexually violent offender and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A repeat sexually violent offender is, in turn, defined as a person convicted, or found not guilty by reason of insanity, of more than one sexually violent offense.[2] A behavioral abnormality is defined as "a congenital or acquired condition that,

---

[2] The statutory definition is slightly more nuanced than this description. Specifically, it provides:

> A person is a repeat sexually violent offender for the purposes of this chapter if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses or if:
>
> (1) the person:
>
>     (A) is convicted of a sexually violent offense, regardless of whether the sentence for the offense was ever imposed or whether the sentence was probated and the person was subsequently discharged from community supervision;
>
>     (B) enters a plea of guilty or nolo contendere for a sexually violent offense in return for a grant of deferred adjudication;
>
>     (C) is adjudged not guilty by reason of insanity of a sexually violent offense; or
>
>     (D) is adjudicated by a juvenile court as having engaged in delinquent conduct constituting a sexually violent offense and is committed to the Texas Youth Commission under Section 54.04(d)(3) or (m), Family Code; and
>
> (2) after the date on which under Subdivision (1) the person is convicted, receives a grant of deferred adjudication, is adjudged not guilty by reason of insanity, or is adjudicated by a juvenile court as having engaged in delinquent conduct, the person commits a sexually violent offense for which the person:

3

by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

Before the release or discharge of a person who either (1) is serving a sentence for a sexually violent offense or (2) has been committed after having been adjudged not guilty of a sexually violent offense by reason of insanity, his records are forwarded to a multidisciplinary team[3] which is to:

- determine whether the person is a repeat sexually violent offender and whether the person is likely to commit a sexually violent offense after release or discharge;

---

(A)  is convicted, but only if the sentence for the offense is imposed; or

(B)  is adjudged not guilty by reason of insanity.

Tex. Health & Safety Code Ann. § 841.003 (West 2003).

[3] The multidisciplinary team—established jointly by the executive director of the department of criminal justice and the commissioner of the department of mental health and mental retardation—consists of the following:

- two persons from the department of mental health and mental retardation;

- three persons from the department of criminal justice, one of whom must be from the victim services office of that department;

- one person from the department of public safety; and

- one person from the interagency council on sex offender treatment.

*See id.* § 841.022(a) (West 2003).

4

- give notice of that determination to the department of criminal justice or the department of mental health and mental retardation, as appropriate; and

- recommend the assessment of the person for a behavioral abnormality, as appropriate.

*See id.* §§ 841.021-.022. After the multidisciplinary team gives its notice and recommendation to either the department of criminal justice or the department of mental health and mental retardation, that department must "determine whether the person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.023(a).

To "aid in the determination," the department is required to have an expert examine the person and "make a clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques." *Id.* If the department determines that the person suffers from such a behavioral abnormality, it is to inform an attorney in the state's prison prosecution unit,[4] who then has the option to file a petition and initiate a trial. *See id.* §§ 841.023(b), .041. Once a petition is filed, both the person and the state are entitled to an immediate examination of the person by an expert. *See id.* § 841.061(c).

If the state's attorney initiates a trial, she is required to prove beyond a reasonable doubt that the person is a sexually violent predator. *Id.* § 841.062(a). The person is afforded several additional procedural rights during trial as well, such as the right to be represented by an attorney from the office of state counsel for offenders, to demand a jury trial, to appear at trial and present

---

[4] Section 841.004 provides that "[a] special division of the prison prosecution unit, separate from that part of the unit responsible for prosecuting criminal cases, is responsible for initiating and pursuing a civil commitment proceeding under this chapter." *Id.* § 841.004 (West 2003).

5

evidence, to cross-examine witnesses, and to view and copy all petitions and reports in the court file. *See id.* § 841.005, .061. If a person demands a jury trial, he can be committed only on a unanimous verdict. *See id.* § 841.062(b).

If the trial results in a determination that the person is a sexually violent predator, the judge is required to "commit the person for outpatient treatment and supervision to be coordinated by [a] case manager,"[5] and impose on the person certain "requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community." *See id.* §§ 841.081-.082. Such requirements include among other things:

- requiring the person to reside in a particular location;

- prohibiting the person's contact with the victim or any potential victim;

- prohibiting the person's use of alcohol or a controlled substance;

- requiring the person's participation in a specific course of treatment;

- requiring the person to submit to tracking [*i.e.*, electronic monitoring or other technological service designed to track a person's location];

- prohibiting the person from changing his residence or leaving the state without prior authorization by the judge; and

- any other requirements determined necessary by the judge.

*See id.* § 841.082. The statute makes violation of any of these imposed requirements a criminal offense. *See id.* § 841.085.

---

[5] A case manager is defined as a person employed by or under contract with the interagency council on sex offender treatment to perform duties related to outpatient treatment and supervision of a person committed as a sexually violent predator. *See id.* §§ 84.002(3), (4) (West 2003).

*The Trial*

Browning was convicted of the aggravated sexual assault of two children and the aggravated kidnaping of another. He was sentenced to twelve years' imprisonment for these crimes. Prior to his release from prison, the state sought to have him civilly committed as a sexually violent predator.

Before trial, the state invoked its right to have Browning investigated by an expert. After interviewing Browning and conducting clinical tests, Dr. Rahn Baily—the psychiatrist ordered by the court to examine Browning—concluded that Browning has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

The state also called Dr. Charles Woodrick, a correctional psychologist under contract with the department of criminal justice, who examined Browning to aid the department in making its determination of whether Browning's case should be forwarded to the state's attorney, *i.e.*, whether, in the opinion of the department, Browning suffered from the requisite behavioral abnormality. Dr. Woodrick testified that, based on his interview with Browning and his review of the department's files, he diagnosed Browning with pedophilia, which he described as a behavioral abnormality. He also testified that Browning was at a high risk for reoffending.

After deliberating, the jury returned a verdict finding that Browning is a sexually violent predator. The court then entered judgment on the verdict and ordered that Browning be "committed for outpatient treatment and supervision to be coordinated by a case manager . . . ." The court's judgment also imposes a series of "commitment requirements," ordering among other things that Browning shall reside in Travis County, refrain from changing his residence without prior court

authorization, refrain from using alcohol or other controlled substances, participate in a specific course of treatment to be determined by the interagency council on sex offender treatment, and submit to tracking by a GPS electronic monitor.

On appeal, Browning urges that the civil-commitment proceedings established by statute are punitive and criminal, rather than civil in nature. He therefore reasons that he should have been accorded the constitutional safeguards attendant to a criminal prosecution, including the protections against double jeopardy, ex post facto laws, and self incrimination under the federal constitution. He also argues that the statute and the court's final order are unconstitutionally vague, that the statute violates the separation of powers, and that the court erred in admitting evidence of his prior convictions after he stipulated to them.

## DISCUSSION

### *Nature of the Proceeding*

We initially note that the United States Supreme Court has found a very similar Kansas statute to be civil in nature and that the Beaumont court of appeals has found the Texas statute to be civil as well. *See Kansas v. Hendricks*, 521 U.S. 346, 360-69 (1997); *Beasley v. Molett*, 95 S.W.3d 590, 607-08 (Tex. App.—Beaumont 2002, pet. filed); *see also Allen v. Illinois*, 478 U.S. 364, 375 (1986) (somewhat similar Illinois statute deemed civil). Browning argues that the Kansas statute is significantly different from the Texas statute and insists that the Beaumont court simply made the wrong decision. We reject Browning's contentions and join the Beaumont court in finding the civil-commitment statute to be nonpunitive and therefore civil in nature.

8

The categorization of a proceeding as civil or criminal is "first of all a question of statutory construction." *Hendricks*, 521 U.S. at 361 (quoting *Allen*, 478 U.S. at 368); *see Beasley*, 95 S.W.3d at 607. Our initial inquiry is therefore whether the legislature intended chapter 841 to be a *civil* statute, *i.e.*, whether it intended the civil-commitment proceedings to be conducted "in a nonpunitive, noncriminal manner." *See Allen*, 478 U.S. at 368 (1986); *Hendricks*, 521 U.S. at 361; *Beasley*, 95 S.W.3d at 607. Here, the legislature clearly manifested its intent by titling the statute "civil commitment of sexually violent predators," *see* Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4122, 4143, and by explicitly referring to "*civil* commitment" in the statute. *See, e.g.*, Tex. Health & Safety Code Ann. § 841.081, .082(a), .145(a), .146 (emphasis added).

But a label is not dispositive. *See Hendricks*, 521 U.S. at 361; *Beasley*, 95 S.W.3d at 607. We will reject the manifest intent of the legislature only when a party challenging the statute provides the clearest proof that the statute is so punitive, either in purpose or effect, as to negate the legislature's expressed intention to deem it civil. *Hendricks*, 521 U.S. at 361; *Beasley*, 95 S.W.3d at 607. In determining whether Browning has met this heavy burden, we consider whether the sanction involves an affirmative disability or restraint; whether it has historically been regarded as punishment; whether it comes into play only on a finding of scienter; whether its operation will promote retribution and deterrence (the traditional aims of criminal punishment); whether the behavior to which it applies is already a crime; whether an alternative purpose to which it may be rationally connected is plausible; and whether it appears excessive in relation to the alternative

9

purpose assigned. *Beasley*, 95 S.W.3d at 607 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)); *see Hendricks*, 521 U.S. at 361-69.

The statute undoubtedly subjects Browning to a series of affirmative restraints—he is required to reside in a specific county, to accept treatment, and to submit to electronic monitoring. However, states are permitted to restrict the freedom of the dangerously mentally ill, and doing so has historically been regarded as a legitimate non-punitive governmental objective. *Hendricks*, 521 U.S. at 363. The United States Supreme Court has stated that the confinement of mentally unstable individuals who present a danger to the public is a classic example of nonpunitive detention. *See id.* (internal quotation and citation omitted). Significantly, the Kansas statute more severely restrains those committed than does the Texas statute. Under Kansas's scheme for commitment of sexually violent predators, persons who are committed are confined in a secure facility, while persons committed under the Texas statute are treated as an outpatient and required to submit to the several restrictions discussed above. *Compare* Tex. Health & Safety Code Ann. §§ 841.081-.083, *and Beasley*, 95 S.W.3d at 607, *with* Kan. Stat. Ann. § 59-29a07(a) (2002), *and Hendricks*, 521 U.S. at 353. It goes without saying that while Browning's liberty is indeed restrained, the intrusion is far less restrictive than if he were confined in a secure facility in Kansas. And yet the Supreme Court found commitment under the Kansas act to be civil in nature. *See Hendricks*, 521 U.S. at 360-69.

The Texas statute does not implicate to any significant degree the two primary objectives of criminal punishment—deterrence and retribution. The statute's purpose is not retributive because it does not affix culpability for prior criminal conduct. *See id.* at 362. A person may be committed because he suffers from a behavioral abnormality, *i.e.*, a congenital or acquired

10

condition that by affecting the person's emotional or volitional capacity predisposes him to commit a sexually violent offense. *See* Tex. Health & Safety Code Ann. §§ 841.002(2), .003(a); *Beasley*, 95 S.W.3d at 607. It is true that the statute also requires one to have been convicted, or found not guilty by reason of insanity, of at least two sexually violent criminal offenses, but that fact alone does not necessarily imply that the purpose of the statute is to punish offenders a second time for their conduct. As the record in this case makes clear,[6] the primary purpose of requiring proof of prior convictions is evidentiary. In other words, a person's history of sexually violent conduct is highly relevant to whether he suffers from a behavioral abnormality making it difficult for him to control his impulses to commit sexually violent offenses.[7] *See In re Commitment of Mullens*, 92 S.W.3d 881, 884 (Tex. App.—Beaumont 2002, no pet h.) ("[T]he offense showing under the Texas statute . . . [is] received primarily to show the accused's mental condition and to aid in the prediction of future behavior."); *see also Hendricks*, 521 U.S. at 362 (quoting *Allen*, 478 U.S. at 371). The fact

---

[6] The experts who testified in this case based their diagnoses of Browning on his conduct as revealed in his criminal records as well as personal interaction with Browning in the form of interviews and tests.

[7] Browning makes a curious argument on this point. He claims:

> These prior convictions are not received for evidentiary purposes, because the focus at trial should be whether the person currently has a behavioral abnormality or not. Focusing on past convictions should not be relevant to determining if the person presently has a behavioral abnormality. Therefore the purpose of requiring the prior convictions is solely for retribution against those who have the prerequisite convictions.

We agree with Browning that the focus at trial should be whether the person currently suffers from a behavioral abnormality. However, we strongly disagree with his contention that a person's history of sexual violence is not relevant to determining if the person presently has a behavioral abnormality.

11

that the statute is "tied to criminal activity" is insufficient to render it punitive. *Hendricks*, 521 U.S. at 362.

Closely related to the issue of retribution is whether the statute requires a finding of scienter—*i.e.*, a criminally culpable mental state. The statute requires commitment to be based on a finding that the person is a sexually violent predator, which means that the person both has a behavioral abnormality—*i.e.*, a congenital or acquired condition affecting his emotional or volitional capacity that predisposes him to commit a sexually violent offense to the extent that he becomes a menace to the health and safety of others—and has been either convicted, or found not guilty by reason of insanity, of two or more sexually violent offenses. Browning argues that "by requiring proof of prior criminal convictions, the statute is requiring proof of a criminally culpable mental state." Browning is mistaken for two reasons. First, the statute does not require proof of criminal convictions—one can be civilly committed after being found not guilty by reason of insanity. Second, even when the state relies on prior convictions, as in this case, the mere fact that the underlying offenses involved scienter findings does not necessarily mean that commitment under *this* statute requires such a finding. In finding the sex-offender registration statute to be civil in nature, the court of criminal appeals stated:

> Although a culpable mental state may be required with respect to some of the underlying offenses, this does not answer the question of whether the registration statute requires a culpable mental state. . . . [T]he statute becomes operational automatically upon an offender's release. Therefore, the statute does not require a culpable mental state with respect to the registration and notification provisions, and we weigh this factor in favor of a finding that the statute is nonpunitive.

*Rodriguez v. State*, 93 S.W.3d 60, 73 (Tex. Crim. App. 2002).

12

Similarly, the statute at issue in this case does not itself require a finding of scienter. As discussed above, a person is committed under the statute because he has a behavioral abnormality that renders him dangerous to the community, and the purpose of requiring prior convictions is primarily evidentiary.[8] Any scienter findings encompassed in prior convictions are entirely incidental to and do not affect—in one way or the other—commitment under the act. *See Beasley*, 95 S.W.3d at 607 (Texas statute "involves no finding of scienter").

Nor do we find that the statute implicates the other primary purpose of criminal punishment—deterrence. A person is committed under the act because he has a behavioral abnormality affecting his emotional or volitional capacity that makes it difficult for him to control his propensity to commit acts of sexual violence. The Supreme Court reasoned in *Hendricks* that, "[s]uch persons are . . . unlikely to be deterred by the threat of confinement." *Hendricks*, 521 U.S. at 362-63. We agree. Moreover, we note that any incidental, marginal deterrent effect of Texas's outpatient-treatment and monitoring scheme will necessarily be less than any deterrence effected by Kansas's scheme of confinement. The purpose of the statute is to protect society from sexually violent predators by incapacitating them to some extent and by treating to some degree their difficult-to-treat conditions.

In his argument that deterrence is the primary purpose of the statute, Browning relies heavily on section 841.085, which provides that "[a] person commits an offense if the person violates

---

[8] Moreover, "[t]hat the State has chosen not to apply the [statute] to the larger class of mentally ill persons who might be found sexually dangerous does not somehow transform a civil proceeding into a criminal one." *Allen v. Illinois*, 478 U.S. 364, 370 (1986) (discussing requirement that criminal charges be brought against someone before he becomes eligible for civil commitment under somewhat similar Illinois statute).

a requirement imposed under [s]ection 841.082 [*e.g.*, submitting to electronic monitoring]. An offense under this section is a felony of the third degree."**⁹** Tex. Health & Safety Code Ann. § 81.085. Browning argues that the section attempts to deter persons "from engaging in future criminal conduct." We disagree. The primary purposes of the statute are protection of the public and treatment of the person. Section 841.085 *does* attempt to deter persons subject to civil commitment from violating the terms and conditions of the civil commitment articulated in the court's order. But it is deterrence from *future criminal acts* which is a purpose of *criminal punishment*.

The remaining factors for us to consider—whether the behavior to which the statute applies is already a crime; whether an alternative purpose for the statute exists to which it may rationally be connected; and whether the statute appears excessive in relation to that alternative purpose—all weigh in favor of the statute being deemed civil in nature. The statute does not sanction criminal *behavior*—it focuses on the person's current *condition*. The statute's alternate purposes have already been discussed. They are to protect the public from, and to provide treatment to, sexually violent predators. Moreover, it is clear the statute is not excessive in relation to those purposes. As we have noted, the Texas statute and its scheme for outpatient treatment is

---

**⁹** Browning also argues that section 841.085 is retributive because the statute criminally punishes a person for prior criminal conduct. He reasons that "[i]f a person had not engaged in the prior criminal conduct, that person could not be punished per this criminal clause because that person could not be civilly committed per the statute." We are not moved by this argument. Section 841.085 punishes violations of the requirements in the commitment order only, not any prior criminal conduct. *See In re the Commitment of Mullens*, 92 S.W.3d 881, 884 (Tex. App.—Beaumont, 2002, no pet. h.).

14

significantly less severe than its Kansas counterpart that the Supreme Court has declared to be civil in nature. *See Hendricks*, 521 U.S. at 360-69.

After balancing the relevant factors, we conclude that Browning has failed to meet his burden to show by clearest proof that the statute is so punitive in purpose or effect as to negate the legislature's intention to deem it civil. Browning's first issue is overruled.[10]

## *Volitional Control*

In his second issue, Browning claims that the court erred in refusing to submit to the jury a question asking whether he had serious difficulty controlling his behavior. He claims that by failing to ask this question of the jury, the court ran afoul of the United States Supreme Court's

---

[10] In his fourth and fifth issues, Browning argues that his Fifth Amendment privilege against self incrimination was violated: (1) when he was interviewed by Dr. Woodrick and Dr. Bailey, both of whom testified at trial; and (2) when he was required to submit to a deposition, portions of which were admitted as evidence at trial. Because we have held this proceeding to be civil and not criminal, Browning did not have a Fifth Amendment privilege to refuse to answer any questions at all. *See Allen*, 478 U.S. at 368, 375. Browning nonetheless has a Fifth Amendment privilege not to answer official questions put to him in any proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. *Id.* at 368 (quotation omitted). However, blanket assertions of the privilege in civil cases are impermissible. *In re Speer*, 965 S.W.2d 41, 46 (Tex. App.—Fort Worth 1998, orig. proceeding); *see Mullens*, 92 S.W.3d at 888. Instead, the privilege must be asserted on a question-by-question basis. *See Mullens*, 92 S.W.3d at 888; *Speer*, 965 S.W.2d at 46. Because Browning did not assert his Fifth Amendment privilege on a question-by-question basis as he was required to in this civil proceeding, he did not preserve error on this issue. Browning also argues in his fifth issue that introduction of his deposition testimony at trial violated his equal-protection rights. However, he did not raise this issue at the trial court and therefore failed to preserve it for our review. *See* Tex. R. App. P. 33.1(a); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993). We overrule Browning's fourth and fifth issues.

15

decision in *Kansas v. Crane*. 534 U.S. 407, 413 (1997). In *Crane*, the Supreme Court required "proof of serious difficulty in controlling behavior" before a person can be civilly committed as a sexually violent predator. *Id.*; *see also Mullens*, 92 S.W.3d at 884. The Court did not articulate what it meant by "serious," but stated that the difficulty, considering the nature of the psychiatric diagnosis and the severity of the mental abnormality itself, must be sufficient to distinguish the committed person from the "dangerous but typical [criminal] recidivist." *Crane*, 534 U.S. at 413.

The charge of the court in this case included the following question: "Do you find that William P. Browning suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence?" The charge also defined behavioral abnormality in accordance with the statute: "Behavioral abnormality means a congenital or acquired condition that by affecting a person's emotional or volitional capacity predisposes the person to commit a sexually violent offense to the extent that a person becomes a menace to the health and safety of another person." We hold that this broad-form submission encompassed the required lack-of-control determination. A finding that a person suffers from an emotional or volitional defect so grave as to predispose him to threaten the health and safety of others with acts of sexual violence entails a determination that he has "serious difficulty in controlling behavior." *Cf. Mullens*, 92 S.W.3d at 884-87 (evidence relating to defined abnormality legally sufficient to prove serious difficulty in controlling behavior).

*Crane* undoubtedly requires a lack-of-control determination to be made by the jury. However, it does not require that determination to be made in a specific, independent finding. *See In re Detention of Harry Cain*, No. 5-02-0088, 2003 Ill. App. LEXIS 758, at *10-12 (Ill. App. Ct. June 18, 2003). We overrule Browning's second issue.

16

*Vagueness and Separation of Powers*

As discussed above, if the jury finds that the person is a sexually violent predator, the court is required to commit the person for outpatient treatment and supervision to be coordinated by a case manager and to impose on the person certain requirements "necessary to ensure the person's compliance with treatment and supervision and to protect the community." *See* Tex. Health & Safety Code Ann. §§ 841.081-.082. Among other things, the court must include in its order provisions:

- requiring the person's participation in a specific course of treatment;

- requiring the person to submit to tracking under a particular type of tracking service and to any other appropriate supervision; [and] . . .

- [imposing] any other requirements determined necessary by the judge.

*Id.* § 841.082(a)(4), (5), (9).[11]

---

[11] The court imposed the first two requirements in its final judgment and order of civil commitment in the following language:

- WILLIAM P. BROWNING shall participate in a specific course of treatment, determined by the Interagency Council;

- WILLIAM P. BROWNING shall submit to tracking by GPS electronic monitor provided by the Texas Department of Public Safety[.]

The court also imposed several additional requirements that it deemed necessary, ordering among other things that:

WILLIAM P. BROWNING shall:

- submit to periodic monitoring with a polygraph and plethysmograph as directed by the case manager;

- not possess, own, or drive a motor vehicle. . . . ; [and]

17

Browning argues that the above three enumerated statutory requirements are unconstitutionally vague. He also argues that the third—giving the court the power to impose on him any requirement it deems necessary—violates the separation-of-powers provision of the Texas constitution. *See* Tex. Const. art. II, §1.

We begin our analysis of these issues by presuming that the statute is constitutional. *See Texas Pub. Bldg. Auth. v. Mattox*, 686 S.W.2d 924, 927 (Tex. 1985); *Ex parte Anderson*, 902 S.W.2d 695, 698 (Tex. App.—Austin 1995, pet. ref'd). The burden rests on Browning to establish the statute's unconstitutionality. *Mattox*, 686 S.W.2d at 927.

A statute is unconstitutionally vague if it either forbids or requires the doing of an act in terms that require persons of common intelligence to guess at its meaning. *Connally v. General Constr. Co*, 269 U.S. 385, 391 (1926); *Cotton v. State*, 686 S.W.2d 140, 141 (Tex. Crim. App. 1985).

Browning first argues that section 841.082(a)(5)—requiring him to submit to tracking under a particular type of tracking service or other appropriate supervision—is void for vagueness. He claims "[t]his requirement implies that [Browning] will be prohibited from going certain places or being in certain areas; however, the prohibited places or areas are not specified, leaving [Browning] uncertain as to what conduct is expected of him."

---

- provide appropriate blood and hair samples to allow his inclusion in the DNA Data Bank maintained by the State of Texas . . . [.]

We note initially that section 841.082 is not a general prohibition applicable to the public. It is specifically applicable to the crafting of commitment orders for persons who have been adjudicated sexually violent predators, and it only applies to Browning after the court has crafted such an order. Once the court had set out the requirements in its order, Browning had specific notice of what was required. *See Mullens*, 92 S.W.3d at 888.

We reject Browning's contention that the tracking requirement implies that there will be certain areas—unspecified in the court's order—that Browning will be prohibited from going. The order does prohibit Browning from leaving the state without prior court permission and from coming within 1000 feet of "premises where children commonly gather, including a school, day-care facility, playground, public or private youth center, public swimming pool, or video arcade facility." Browning does not argue that these requirements are vague, and we see no reason to assume or "infer" that the tracking requirement itself means that there exist unspecified zones that Browning can be punished for entering.

Browning's attack on section 841.082(a)(4)—requiring his participation in a "specific course of treatment"—is slightly different. He argues that to survive a vagueness challenge, either the statute or the order must "specify in what treatment [Browning] must participate," and that it was therefore impermissible for the court to "delegate[] the responsibility of determining the specifics of the treatment to the case manager." As with the tracking issue, we note that once the court had set out the requirement in its order, Browning did have specific notice of what was required of him. *See id.* He was to participate in a specific course of treatment, to be determined by a case manager employed by or under contract with the interagency council on sex offender treatment. A statute is

19

not vague simply because its words or phrases are not specifically defined. *See Morgan v. State*, 557 S.W.2d 512, 514 (Tex. Crim. App. 1997). The fact that the trial court allows professionals to determine Browning's specific course of treatment does not render the statute unconstitutionally vague.

Although he does not specifically brief the point, Browning's true argument seems to be that the statute and order constitute an impermissible delegation of legislative or judicial authority to the interagency council on sex offender treatment. In this regard, we note that to delegate the authority to determine a specific course of treatment for a person suffering from a behavioral abnormality to an agency equipped to specifically tailor, and change as needed, the person's treatment plan strikes us as being highly appropriate. *Cf. Salmons v. State*, 571 S.W.2d 29, 30 (Tex. Crim. App. 1978).

Browning claims that section 841.082(a)(9)—allowing the court to impose any additional commitment requirements that it deems necessary—is unconstitutionally vague[12] and violates the separation-of-powers provision of the Texas constitution. *See* Tex. Const. art. II, §1.

---

[12] As with the other two provisions Browning challenges for vagueness, Browning had sufficient notice of what was required of him once the court issued its order. Browning does not claim that the additional requirements imposed by the court are themselves vague. We therefore reject Browning's contention that 841.082(a)(9) is void for vagueness. *See Mullens*, 92 S.W.3d at 888 ("Once [the] terms or requirements are set out in the order, the person has specific notice of what is required"); *Beasley v. Molett*, 95 S.W.3d 590, 609 (Tex. App.—Beaumont 2002, pet. filed) ("[T]hat different judges might establish different specific requirements does not render those requirements necessarily vague after they are issued and subject to compliance.").

The power to pass laws and to revise the criminal law of Texas is vested in the legislature. *Id.* art. III, § 1; *See Beasley*, 95 S.W.3d at 609 (citing Tex. Const. art. III, §§ 30, 43). The separation-of-powers provision of the Texas constitution provides:

> The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another; and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

*Id.* art. II, § 1.

Browning reasons that because the court may impose on him any commitment requirements it deems necessary under section 841.082(a)(9), and because section 841.085 makes violation of such requirements a criminal offense, that the legislature has therefore impermissibly conferred upon the judiciary the power to "create new criminal laws." We disagree.

The legislature itself set forth in great detail the procedures and substantive criteria for subjecting a person to civil commitment. *See* Tex. Health & Safety Code Ann. §§ 841.001-.147. Recognizing the need for flexibility in administering a civil-commitment scheme on an outpatient basis, the legislature has authorized trial courts to order requirements necessary to ensure the compliance of the committed person with treatment and supervision and to protect the community. *See id.* § 841.082(a)(9). Because it is the legislature, and not the courts, that has determined that violations of any of the statutory commitment requirements—including those requirements specified by the judge—are criminal violations, there is no separation-of-powers problem. *See Beasley*, 95 S.W.3d at 609.

21

Neither the statute nor the order itself is vague in its requirements.  Additionally, sections 841.082(a)(9) and 841.085 do not create separation-of-powers problems.  We overrule Browning's third issue.

### *Relevance of Prior Convictions*

In his sixth issue, Browning argues that "[a]dmitting evidence regarding appellant's prior convictions was error when appellant stipulated to said convictions."  He claims that evidence admitted relating to his former convictions—including department of criminal justice records—was not relevant, *see* Tex. R. Evid. 401, and, if relevant, its probative value was substantially outweighed by the risk of unfair prejudice, *see id.* 403.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion.  *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995).  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Tex. R. Evid. 401.  Relevant evidence is admissible except as otherwise provided by constitution, statute, rule of evidence, or other rule prescribed by statutory authority.  *See* Tex. R. Evid. 402.

Browning's argument that the evidence relating to his prior conviction is irrelevant is predicated on his characterization of the statute's prior-conviction requirement as "jurisdictional." However, in our discussion of the civil nature of the proceedings, we have held that the required proof of prior convictions is evidentiary, not jurisdictional.  We explained that a person's history of sexually violent conduct is highly relevant to whether he suffers from a behavioral abnormality that makes it difficult for him to control his impulses to commit sexually violent offenses.  Moreover,

22

because of its evidentiary importance, we cannot say that the trial court abused its discretion by failing to rule that any "unfair prejudice" raised by his prior convictions substantially outweighed its probative value.

## **CONCLUSION**

Title 11, chapter 841 of the health and safety code is a civil statute. Browning was therefore not entitled to the constitutional safeguards attendant to a criminal proceeding. Moreover, the challenged portions of the statute are not unconstitutionally vague nor do they violate separation-of-powers principles. Having overruled all of Browning's issues, we affirm the trial court's final judgment and order of civil commitment.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: August 14, 2003