

NUMBER 13-17-00258-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

In Re: Commitment of Leonard Flores

On appeal from the 214th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Hinojosa**
**Memorandum Opinion by Justice Contreras**

On March 1, 2017, a jury found beyond a reasonable doubt that appellant Leonard

Flores is a sexually violent predator (SVP). *See* TEX. HEALTH & SAFETY CODE ANN. §

841.003(a) (West, Westlaw through 2017 1st C.S.). The trial court adjudged Flores as a

SVP and civilly committed him for sex-offender treatment and supervision. *See id.* §

841.081 (West, Westlaw through 2017 1st C.S.). By two issues, Flores contends that the

trial court erred by: (1) admitting into evidence a voluntary written statement he gave to

police during a previous criminal investigation, and (2) allowing the State's expert to testify

as to the details underlying Flores's past convictions and other alleged bad acts. We affirm.

## I. BACKGROUND

On October 29, 2010, Flores was convicted and sentenced to ten years' imprisonment for aggravated sexual assault of a child[1] and sexual assault.[2] *See* TEX. PENAL CODE ANN. §§ 22.011, 22.021 (West, Westlaw through 2017 1st C.S.). On February 16, 2016, as Flores approached the end of his sentence for the aforementioned crimes, the State filed its petition for civil commitment alleging that Flores is a SVP. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.041 (West, Westlaw through 2017 1st C.S.).

For the purpose of the civil commitment proceeding, there were three other incidents in Flores's past that were of interest to the State: (1) Flores's 2003 juvenile conviction for indecency with a child,[3] *see* TEX. PENAL CODE ANN. § 21.11 (West, Westlaw through 2017 1st C.S.); (2) Flores's arrest in 2003 for having sex with two fourteen-year-old boys while he was living in a foster home, although the charges were ultimately dismissed; and (3) Flores's expulsion from a youth wilderness camp sometime in 2003 or 2004 due to allegations that Flores had sex with a staff member and with another camper who was a child.[4]

---

[1] The victim in Flores's 2010 conviction for aggravated sexual assault of a child was a four-year-old girl who was the daughter of Flores's girlfriend at the time of the offense. Evidence at trial showed that Flores failed to inform the victim's mother that he was a registered sex offender when they began dating.

[2] The victim in Flores's 2010 conviction for sexual assault was his adult sister.

[3] The victim in Flores's 2003 conviction for indecency with a child was a four-year-old girl who was the daughter of Flores's foster parents. Flores was sixteen years old at the time of this offense.

[4] Flores stated at trial that he could not remember whether he was kicked out of the youth wilderness camp for having sex with a child or for having sex with a staff member. Regardless of the reason why Flores was kicked out, the State's expert, Michael Arambula, M.D., testified that the records he reviewed alleged Flores engaged in some sexual activity with both a staff member and another camper who was a child.

Trial began on February 28, 2017, and the State called Flores as its first witness. Flores testified as to the events surrounding his convictions for indecency with a child, aggravated sexual assault of a child, and sexual assault. He also testified as to the events surrounding his expulsion from the youth wilderness camp. However, Flores denied having sex with two fourteen-year-old boys at the foster home, and he denied giving a statement to police after being arrested for this. To refresh his memory, the State presented Flores with a written statement he gave to police when he was arrested for having sex with the two fourteen-year-old boys from the foster home.

The State then moved to admit the statement into evidence, and Flores objected because the statement was cumulative and substantially more prejudicial than probative. *See* TEX. R. EVID. 403. The State argued that Flores's statement directly addressed the sexual offending behavior at issue, and that the State's expert witness considered the statement and surrounding circumstances in forming the basis for his opinion. The trial court overruled Flores's objections, admitted Flores's statement into evidence, and Flores then testified as to having sex with both fourteen-year-old boys.

After Flores's testimony, the State called a board-certified forensic psychiatrist, Michael Arambula, M.D., as its expert witness. Dr. Arambula explained he had been asked by the State to determine whether Flores has a behavioral abnormality that made him likely to engage in a predatory act of sexual violence. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(2), .003(a) (West, Westlaw through 2017 1st C.S.).

Dr. Arambula testified that he receives mental health records, legal records, investigative records, victim statements, administrative records, and medical records

3

when asked to conduct a behavioral abnormality evaluation, and that he reviews and relies on these records in forming his opinion. Dr. Arambula also testified that he reviewed and considered Flores's three sexual criminal convictions, as well as other allegations that did not reach the level of a criminal conviction, such as Flores's arrest for having sex with the two fourteen-year-old boys at the foster home and his expulsion from the youth camp. In doing his evaluation, Dr. Arambula interviewed Flores for "probably two-and-a-half hours." Dr. Arambula explained that experts in his field typically review and rely on these types of records in formulating their opinion.

Dr. Arambula testified that he found that Flores has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Specifically, he diagnosed Flores as having a sexual deviance with pedophilic features, antisocial personality disorder, and polysubstance dependence.

As the State began to question Dr. Arambula concerning how and why he formulated his diagnosis, Flores objected to Dr. Arambula's testimony because it was based on hearsay, and because it was substantially more prejudicial than probative. *See* TEX. R. EVID. 403, 705, 801, 802. The court overruled Flores's objections and granted him running objections to Dr. Arambula's testimony on these grounds. The court then gave the jury limiting instructions, and Dr. Arambula proceeded to testify as to the details of Flores's convictions and alleged bad acts that played a role in formulating his diagnosis. Dr. Arambula's explanation divulged to the jury underlying facts and data from each of Flores's criminal convictions and from the alleged incidents of sexual misconduct at the foster home and at the youth camp.

After the parties rested, the State moved for a directed verdict on the issue of whether Flores is a repeat sexually violent offender—the first requirement for civil commitment under the Texas SVP statute—and the court granted it. *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003 ("A person is a repeat sexually violent offender for the purposes of this chapter if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of those offenses . . . ."). The case then went to the jury for the determination of whether Flores "suffers from a behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." *See id.* 841.003(a)(2).

The jury returned a unanimous verdict finding Flores a SVP, thereby, implicitly finding the remaining required element—that he suffers from said behavioral abnormality. *See id.* § 841.002(2). The trial court rendered a final judgment reflecting the jury's verdict and ordered that Flores be civilly committed. Flores filed a motion for a new trial, which was overruled as a matter of law, and this appeal followed.

## II.    STANDARD OF REVIEW

We review a trial court's ruling admitting or excluding evidence in a civil commitment proceeding for an abuse of discretion. *In re Commitment of Mares*, 521 S.W.3d 64, 69 (Tex. App.—San Antonio, 2017, pet. denied) (citing *In re Commitment of Browning*, 113 S.W.3d 851, 865 (Tex. App.—Austin 2003, pet. denied)); *see Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam). A trial court abuses its discretion when it acts without regard for guiding rules or principles. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). "A successful challenge to evidentiary rulings usually requires the complaining party to show that the

5

judgment turns on the particular evidence excluded or admitted." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995). "We determine whether the case turns on the challenged evidence by reviewing the entire record." *See id.* at 754 (citing *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex. 1989) (per curiam)); *see also In re Commitment of Haines*, No. 09-15-00526-CV, 2016 WL 3356571, at *3 (Tex. App.—Beaumont June 16, 2016, no pet.) (mem. op.).

We will not reverse a judgment on the admission or exclusion of evidence unless the appellant establishes that the trial court's ruling was in error, and that the error probably did cause the rendition of an improper judgment. *State v. Cent. Expressways Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *see also* TEX. R. APP. P. 44.1(a)(1); *Haines*, 2016 WL 3356571 at *4. "[T]he exclusion or admission of evidence is likely harmless if the evidence was cumulative, or the rest of the evidence was so one-sided that the error likely made no difference in the judgment." *Cent. Expressways Sign Assocs.*, 302 S.W.3d at 870.

### III. APPLICABLE LAW

A person is a "sexually violent predator" subject to civil commitment if the person: (1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence. TEX. HEALTH & SAFETY CODE ANN. § 841.003(a). A behavioral abnormality is "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2).

The State can file a petition alleging that a person is a SVP, *see id.* 841.041, which will require a trial on the issue and, if the person is found to be a SVP, subsequent civil commitment for treatment. *See id.* §§ 841.061–.065, .081(a) (West, Westlaw through 2017 1st C.S.). Usually, an expert will examine the defendant and testify as to his opinion on whether that person suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* §§ 841.003(a), .061(c), (f) (West, Westlaw through 2017 1st C.S.); *see also, e.g.*, *In re Commitment of Talley*, 522 S.W.3d 742, 748 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *In re Commitment of Stuteville*, 463 S.W.3d 543, 554–55 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *In re Commitment of Anderson*, 392 S.W.3d 878, 882–83 (Tex. App.—Beaumont, 2013, pet. denied).

When testifying, an expert may disclose the underlying facts or data upon which the expert based his or her opinion if they are of the type relied upon by experts in the field in forming opinions on the subject. *Talley*, 522 S.W.3d at 748; *Stuteville*, 463 S.W.3d at 554–55; *see* TEX. R. EVID. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the [expert's] opinion to be admitted."); *id.* R. 705 (stating that an "expert may . . . disclose on direct examination, or be required to disclose on cross-examination, the underlying facts or data"); *In re Commitment of Day*, 342 S.W.3d 193, 198–99 (Tex. App.—Beaumont 2011, pet. denied) (explaining why, in SVP cases, evidence regarding the details of an alleged SVP's prior offense has probative value to help the jury understand the expert's opinion). Accordingly, in SVP civil commitment cases, the facts or data underlying previous sexual assaults and other alleged bad acts are admissible

when they assist the jury in understanding the expert's testimony that a person has a behavioral abnormality, so long as experts in the field rely on that type of facts or data in forming their opinions on the subject. *Talley*, 522 S.W.3d at 748–49; *Stuteville*, 463 S.W.3d at 555–56; *Day*, 342 S.W.3d at 198–99; *see* Tᴇx. R. Eᴠɪᴅ. 703, 705.

However, the admission of the underlying facts or data is still subject to the same relevancy constraints that govern the admission of other kinds of evidence. *Talley*, 522 S.W.3d at 748; *see* Tᴇx. R. Eᴠɪᴅ. 705(d). Thus, a court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice. Tᴇx. R. Eᴠɪᴅ. 403.

"Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis, commonly, but not necessarily, an emotional one." *Anderson*, 392 S.W.3d at 882. Factors that should be considered include the probative value of the evidence, the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence. *Stuteville*, 463 S.W.3d at 555; *Anderson*, 392 S.W.3d at 882 (citing *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991) (op. on reh'g)); *see also In re Commitment of Dockery*, No. 09-14-00236-CV, 2015 WL 2124995, at *1–2 (Tex. App.—Beaumont, May 7, 2015, no pet.) (mem. op.).

## IV. Dɪsᴄᴜssɪᴏɴ

### A.  Admission of Voluntary Statement

By his first issue, Flores challenges the admission of the voluntary written statement he gave to police in 2003. Flores gave the statement after being arrested for having sex with two fourteen-year-old boys at the foster home where he was living, and

8

the statement details some of his sexual misconduct with both boys. Here, the State used the statement to refresh Flores's memory on the stand after he initially denied having sex with both boys and making a statement to police. Afterward, the State introduced the statement into evidence. *See* TEX. R. EVID. 612.

Flores first challenges the admission of the statement because Texas Rule of Evidence 612 "does not state that the producing party that used the statement to refresh their own witness' memory has the right to have the statement admitted, even if they also happen to be the adverse party." *See id.* Flores also argues that even if the statement was properly admitted under Texas Rule of Evidence 612, the court should have redacted the statement before introducing it into evidence.[5] *See id.* R. 612(b). However, Flores neither objected at trial to the introduction of the statement on the basis of rule 612, nor asked the trial court to redact the statement. Therefore, this complaint has been waived. *See* TEX. R. APP. P. 33.1.

Next, Flores argues that the trial court erred in admitting the statement because it was substantially more prejudicial than probative. *See* TEX. R. EVID. 403, 705. Specifically, Flores points to two instances of explicit language in the statement used to describe the sexual misconduct between him and the two fourteen-year-old boys.[6]

---

[5] Texas Rule of Evidence 612 governs writings used to refresh a witness' memory. It states in part that:

> [a]n adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness about it, and to introduce in evidence any portion that relates to the witness's testimony. If the producing party claims that the writing includes unrelated matter, the court must examine the writing in camera, delete any unrelated portion, and order that the rest be delivered to the adverse party. Any portion deleted over objection must be preserved for the record.

TEX. R. EVID. 612(b).

[6] Flores complains about the following sentences in his 2003 statement to police: (1) "I told [A.] the next day that [M.] had sucked my dick"; and (2) "The next night, it was like a couple of days later or something, [A.] started fucking [M.] in the ass. It was me after that and then [F.]"

9

As to the statement's probative value and the State's need for the statement, *see Anderson*, 392 S.W.3d at 882, Flores's statement goes to the central issue at trial of whether Flores suffers from a behavioral abnormality, and Dr. Arambula's testimony indicated that he considered Flores's arrest and subsequent statement in forming his opinion. Furthermore, when questioned at trial, Flores denied having sex with the two boys and giving the statement to police. Therefore, the probative value of the statement and the State's need for the statement were high. *See, e.g.*, *Talley*, 522 S.W.3d at 749 (concluding that trial court did not abuse its discretion in admitting Talley's written confession because it "assisted the jury in understanding [the expert's] testimony that Talley had a behavioral abnormality, and Talley placed the veracity of [the facts in the confession] at issue during [his testimony at] trial . . . ."); *Stuteville*, 463 S.W.3d at 556 ("[T]he trial court could have reasonably concluded that the facts and details related to Stuteville's offenses would be helpful to the jury in weighing [Stuteville's] testimony and [the expert's] testimony, and in explaining the basis for [the expert's] opinion that Stuteville suffers from a behavioral abnormality."); *see also In re Commitment of Bath*, No. 09-11-00559-CV, 2012 WL 3860631, at *3 (Tex. App.—Beaumont Sept. 6, 2012, no pet.) (mem. op.) ("The probative value of the statements includes their tendency to show that at one time Bath had admitted to matters that he would no longer admit during the proceedings that led to his commitment.").

Regarding the potential of the statement to irrationally impress the jury, we note that the alleged sexual misconduct with the fourteen-year-old boys described in the statement is no more sordid than Flores's convictions for his other sexual crimes. Furthermore, any prejudicial effect of the statement lies in its probative value rather than

10

an unrelated matter. *See Talley*, 522 S.W.3d at 749; *Robbins v. State*, 27 S.W.3d 245, 251 (Tex. App.—Beaumont 2000) (applying rule 403 in a criminal case), *aff'd*, 88 S.W.3d 256 (Tex. Crim. App. 2002); *see also Bath*, 2012 WL 3860631 at *3. Thus, the potential of the statement to irrationally impress the jury was low. *See Anderson*, 392 S.W.3d at 882; *see also Dockery*, 2015 WL 2124995 at *2. Finally, as to the time needed to develop the evidence, the record reflects that the State spent minimal time in developing the statement.

We conclude that the probative value of the statement, the State's need for the statement, the potential of the statement to impress the jury in some irrational way, and the time needed to develop the statement all weigh in favor of admissibility. *See Talley*, 522 S.W.3d at 749; *Anderson*, 392 S.W.3d at 882; *see also Dockery*, 2015 WL 2124995 at *2; *Bath*, 2012 WL 3860631 at *3–4. Therefore, the trial judge could reasonably have concluded that Flores's statement was not unfairly prejudicial, and the trial court did not abuse its discretion in admitting the statement into evidence. *See Anderson*, at 882–83; *Talley*, 522 S.W.3d at 749; *Day*, 342 S.W.3d at 199.

We overrule Flores's first issue.

## B.    Dr. Arambula's Testimony

By his second issue, Flores argues that details revealed by Dr. Arambula during his testimony were substantially more prejudicial than probative and were based on hearsay. Flores points to statements made by Arambula concerning Flores's first victim, the events surrounding the two fourteen-year-old boys, and the allegation of sexual misconduct with a staff member at the youth wilderness camp. Finally, Flores argues that the fact that the trial court gave the jury a limiting instruction is irrelevant.

11

As noted, an expert may disclose the underlying facts or data upon which the expert based his or her opinion if it is of a type relied upon by experts in the field in forming opinions on the subject. *Talley*, 522 S.W.3d at 748; *Stuteville*, 463 S.W.3d at 554–55; *see* TEX. R. EVID. 703, 705; *Day*, 342 S.W.3d at 198–99. In a SVP civil commitment proceeding, the accused's history of sexually violent conduct and other alleged sexual bad acts are "highly relevant to whether he suffers from a behavioral abnormality making it difficult for him to control his impulses to commit sexually violent offenses." *Mares*, 521 S.W.3d at 71 (quoting *Browning*, 113 S.W.3d at 860, 866) (internal quotations omitted). Thus, to assist the jury in weighing the expert's opinion on the ultimate issue of whether the accused suffers from a behavioral abnormality, the expert can explain the facts considered, including past sexual offenses and alleged bad acts, and how those facts influenced his evaluation. *Stuteville*, 463 S.W.3d at 555; *see In re Commitment of Young*, 410 S.W.3d 542, 557 (Tex. App.—Beaumont 2013, no pet.).

Here, Dr. Arambula explained that he considered multiple types of records in formulating his opinion that Flores suffers from a behavioral abnormality that makes him likely to re-offend with a predatory act of sexual violence. Dr. Arambula explained that experts in his field typically review and rely on the type of records he reviewed in formulating their opinion. Dr. Arambula elaborated that, in forming his diagnosis, he considers factors associated with an offender's risk to re-offend with a predatory act of sexual violence, and he explained that these risk factors come from medical literature and research. During his testimony, Dr. Arambula thoroughly went through Flores's history and records, and he explained the risk factors presented and associated with his behavior in each incident.

Flores points to: Dr. Arambula's statements that there were other alleged instances of sexual misconduct with the first victim, although Dr. Arambula only considered the one instance that led to Flores's conviction in his diagnosis; Dr. Arambula's statements describing the alleged sexual misconduct that took place at the foster home, including his opinion on the significance of the age difference between Flores and the victims; and Dr. Arambula's comments regarding the alleged sexual misconduct between Flores and a staff member at the youth wilderness camp. We disagree with Flores that these statements were substantially more prejudicial than probative.

As to Flores's first offense, Dr. Arambula explained that he considered the age of Flores and the victim, the reports of the offense, and the surrounding circumstances. Dr. Arambula explained that the ages of the victim (four) and Flores (sixteen) were risk factors considered in his diagnosis of Flores's behavioral abnormality. Dr. Arambula elaborated that "starting at [the age of sixteen] raises the risk for more serious disease and higher rates of recidivism." Thus, Dr. Arambula's statements at issue assisted the jury in understanding his diagnosis that Flores has a behavioral abnormality with pedophilic tendencies, the scope of Flores's behavioral abnormality, and the first reported occurrence of Flores's sexual deviancy. *See Anderson*, 392 S.W.3d at 882–83; *see also In re Commitment of Robinson*, No. 09-14-00162-CV, 2015 WL 1736754, at * 2 (Tex. App.—Beaumont Apr. 16, 2015, no pet.) (mem. op.) (citing *Day*, 342 S.W.3d at 199) ("Having an expert explain which facts were considered and how those facts influenced the expert's evaluation assisted the jury in weighing the expert's testimony and the opinion offered regarding the ultimate issue in the case.").

13

As to Flores's sexual misconduct while living at the foster home, Dr. Arambula explained that he looked at the arrest, Flores's statement to police, investigative records, and statements taken from both boys. Dr. Arambula explained that when he interviewed Flores about these events, "it was as if it didn't occur." Dr. Arambula elaborated that denial is a high-risk factor for reoffending and breaking denial "is the first step in sex offender treatment." Furthermore, Dr. Arambula testified about the surrounding events, and he explained that there were several other risk factors: that young boys were involved; that there were threats made to keep victims quiet; and that there was an exchange of money, which is like grooming and "usually associated with sexual victimization of children." Thus, Dr. Arambula's statements at issue were important in explaining to the jury his diagnosis of Flores's behavioral abnormality, and the depth and breadth of the acts Flores committed while acting out on his sexual deviancy. *See Anderson*, 392 S.W.3d at 882–83; *Stuteville*, 463 S.W.3d at 556; *see also Haines*, 2016 WL 3356571, at *6.

As to Dr. Arambula's testimony regarding Flores's expulsion from the youth wilderness camp, Dr. Arambula explained that sexual preoccupation is a risk factor. Dr. Arambula explained that, regardless of whether Flores engaged in sexual misconduct with a child or a staff member, he considered the events from the youth camp as an indication of Flores's sexual preoccupation. Dr. Arambula also explained that Flores was under probation at the time of the incident at the youth wilderness camp and offending while under supervision is another risk factor. Dr. Arambula elaborated as to the significance of this event in his evaluation and diagnosis of Flores:

> [D]espite having gotten in trouble for what he was doing, being under a
> closer supervision, it didn't detract him, in other words, it didn't slow him

14

down.  But what [stuck] out to me more so is that it was very apparent that he was preoccupied with sexual activity.  It was just — it followed from one place, to another, to another.  It didn't really matter the gender.  And he even remarked that he — that sex was an outlet for him, so that — that was the undercurrent or the backdrop behind all of this, and so I looked at his sexual preoccupation on his part.

Thus, Dr. Arambula's statements at issue helped the jury understand his diagnosis that Flores has a behavioral abnormality that makes him likely to re-offend with a predatory act of sexual violence.  *See Anderson*, 392 S.W.3d at 882–83; *Stuteville*, 463 S.W.3d at 556; *see also Dockery*, 2015 WL 2124995, at *3.

While the statements by Dr. Arambula that Flores complains of may be prejudicial, they are also probative, and Flores has failed to demonstrate how they are *substantially* more prejudicial than probative.  *See* TEX. R. EVID. 403.  Therefore, the trial court could have reasonably found that the prejudicial value of Dr. Arambula's statements did not substantially outweigh their probative value.  *See Talley*, 748–49; *Stuteville*, 463 S.W.3d at 556; *Anderson*, 392 S.W.3d at 882–83; *Day*, 342 S.W.3d at 199.

As to the hearsay basis of Dr. Arambula's testimony, the trial judge gave the jury the following limiting instruction in open court:

> Ladies and gentlemen, hearsay is a statement other than one made by the declarant while testifying at the trial or hearing offered to prove the truth of the matter asserted.  Certain hearsay information contained in the records, which have been reviewed by experts, is admitted before you through expert testimony.  Such hearsay is admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

The jury charge contained a similar limiting instruction on hearsay, and, absent record evidence to the contrary, we must assume the jury followed the instruction.  *See Mares*, 521 S.W.3d at 71; *Stuteville*, 463 S.W.3d at 555.  Flores has failed to rebut the presumption that the jury followed the trial court's instructions; therefore, any potential

15

harm arising from Dr. Arambula's testimony concerning the factual details of the sexual assaults was cured. *See Mares*, 521 S.W.3d at 71; *Day*, 342 S.W.3d at 199. We reject as speculative Flores's argument that the limiting instructions were irrelevant.

Finally, the record, including Flores's own testimony and Dr. Arambula's complete testimony, does not support the argument that any of Dr. Arambula's statements caused an improper result in the trial. Thus, any error in allowing the admission of Dr. Arambula's statements does not require reversal of the judgment in this case. *See* TEX. R. APP. P. 44.1; *Cent. Expressways Sign Assocs.*, 302 S.W.3d at 870; *Anderson*, 392 S.W.3d at 883.

We overrule Flores's second issue.

## V.  CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Delivered and filed the
12th day of April, 2018.

16