**IN RE COMMITMENT
OF Reyes MARES**

No. 04-16-00328-CV

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: March 22, 2017

Sarah Brandon, P.O. Box 4005, Huntsville, TX 77342, for Appellant.

Melinda Fletcher, Special Prosecution Unit, Appellate Division, P.O. Box 1744, Amarillo, TX 79105-1744, for Appellee.

Sitting: Rebeca C. Martinez, Justice, Patricia O. Alvarez, Justice, Luz Elena D. Chapa, Justice

## OPINION

Opinion by: Rebeca C. Martinez, Justice

Reyes Mares appeals the trial court's judgment finding him to be a "sexually violent predator" and ordering him to be civilly committed pursuant to Texas Health

and Safety Code section 841.081. Tᴇx. Hᴇᴀʟᴛʜ & Sᴀғᴇᴛʏ Cᴏᴅᴇ Aɴɴ. § 841.081 (West Supp. 2016). On appeal, Mares argues the trial court erred in permitting the State's expert to testify to hearsay details of his sexual offenses that were more prejudicial than probative, and by not permitting him to read to the jury the State's admissions in response to his requests for admissions. Mares also asserts there is insufficient evidence to support the jury's finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. After hearing oral argument in this case, we affirm the trial court's judgment and order of commitment.

## Sᴇxᴜᴀʟʟʏ Vɪᴏʟᴇɴᴛ Pʀᴇᴅᴀᴛᴏʀ Aᴄᴛ

The Sexually Violent Predator Act ("SVP Act") was added as Chapter 841 of the Texas Health and Safety Code in 1999. Tᴇx. Hᴇᴀʟᴛʜ & Sᴀғᴇᴛʏ Cᴏᴅᴇ Aɴɴ. §§ 841.001-.151 (West 2010 & Supp. 2016). Until the Act was amended in 2015, the district court in Montgomery County, Texas had exclusive jurisdiction over all petitions filed under the SVP Act, with appeals heard by the Beaumont Court of Appeals and the Texas Supreme Court.[1] Effective June 17, 2015, the State is required to file a commitment petition in the county where the defendant's most recent conviction occurred. *See id.* § 841.041(a) (West Supp. 2016). This case is one of the first SVP Act appeals to be argued before this court.

In enacting the SVP Act, the Texas legislature made specific findings that public safety and treatment are the primary statutory goals for the "small but extremely dangerous group of sexually violent predators . . . [who] have a behavioral abnor-

mality that is not amenable to traditional mental illness treatment modalities and that makes [them] likely to engage in repeated predatory acts of sexual violence." *Id.* § 841.001 (West 2010). The Texas Supreme Court has determined that commitment under the SVP Act is not punitive or criminal in nature, and that a SVP commitment proceeding is a civil matter to which the constitutional safeguards attendant to a criminal prosecution do not apply. *In re Commitment of Fisher*, 164 S.W.3d 637, 645-53 (Tex. 2005); *see also In re Commitment of May*, 500 S.W.3d 515, 518, 524 (Tex. App.—Beaumont 2016, pet. filed) (holding the 2015 amendments retroactively establishing a tiered inpatient treatment program are not so punitive as to render the statute criminal, instead of civil). The Act provides that, except as otherwise stated, the rules of procedure and appeal for civil cases apply to a civil commitment proceeding. Tᴇx. Hᴇᴀʟᴛʜ & Sᴀғᴇᴛʏ Cᴏᴅᴇ Aɴɴ. § 841.146(b) (West Supp. 2016).

To warrant Mares's civil commitment as a sexually violent predator, the State was required to prove two prongs beyond a reasonable doubt: (1) that Mares is a "repeat sexually violent offender" and (2) that Mares suffers from a "behavioral abnormality that makes [him] likely to engage in a predatory act of sexual violence." *Id.* §§ 841.003(a), 841.062(a) (West Supp. 2016 & 2010). The statute defines a "repeat sexually violent offender" as a person who has been convicted of more than one sexually violent offense and has been sentenced for at least one of the offenses. *Id.* § 841.003(b). Here, the admission into evidence of Mares's pen packet containing the indictments and judgments for the underlying sexual offenses sufficiently estab-

---

1. There are a handful of opinions from other intermediate courts of appeals due to transfers of cases. In addition, for a short period, appeals were filed in the appellate court of the county where the defendant would reside. *See, e.g., In re Commitment of Browning*, 113 S.W.3d 851, 854 n.1 (Tex. App.—Austin 2003, pet. denied).

lished the first prong. Mares does not raise any challenges to this first prong on appeal.

As to the second element, the statute defines a "behavioral abnormality" as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2) (West Supp. 2016). The United States Supreme Court has held that due process requires "proof of serious difficulty in controlling behavior" before a person can be civilly committed as a sexually violent predator. *Kansas v. Crane*, 534 U.S. 407, 413, 122 S.Ct. 867, 151 L.Ed.2d 856 (2002) (the difficulty, considering the nature of the psychiatric diagnosis and the severity of the mental abnormality itself, must be sufficient to distinguish the committed person from the "dangerous but typical [criminal] recidivist."). Courts applying the Texas SVP Act have held that a specific, independent finding on lack-of-control is not required, and that a broad-form jury charge submission based on the statutory definition of a "behavioral abnormality" encompasses the lack-of-control determination required by *Crane*. *See In re Commitment of Browning*, 113 S.W.3d 851, 863 (Tex. App.—Austin 2003, pet. denied); *In re Commitment of Mullens*, 92 S.W.3d 881, 887 (Tex. App.—Beaumont 2002, pet. denied) (evidence relating to behavioral abnormality as defined in the Texas SVP Act was legally sufficient to prove "serious difficulty in controlling behavior"). All of Mares's issues on appeal pertain to this second prong requiring proof that he suffers from a "behavioral abnormality," as defined by the Act.

If the jury returns a unanimous verdict making an affirmative finding that the person is a "sexually violent predator," as defined by the two prongs, the judge must commit the person for treatment and supervision to begin on the date of release from prison and to continue "until the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence." TEX. HEALTH & SAFETY CODE ANN. § 841.081(a) (West Supp. 2016). In the commitment order, the judge must impose "requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community;" such requirements include residing where instructed by the Texas Civil Commitment Office, no contact with the victims, participation in and compliance with the sex offender treatment program, submission to tracking, and not leaving the state without prior authorization. *Id.* § 841.082(a) (West Supp. 2016); *see also id.* § 841.0831 (West Supp. 2016) (establishing a tiered treatment program that transitions from "a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress"). A person who is civilly committed under the Texas SVP Act receives a statutory biennial review of his status, and has the right to file either an authorized or unauthorized petition for release at any time. *See id.* §§ 841.101-.103, 841.121-.124 (West Supp. 2016).

BACKGROUND

The following facts are based on the testimony presented at the jury trial and the pen packet introduced by the State into evidence.

Mares stated he began using alcohol at nine years old and began using and selling drugs at ten years old; he progressed to using and selling methamphetamines and heroin by age twenty. He stated the intravenous drugs would sometimes "heighten

his sex drive." Mares had a juvenile record. In 1989, Mares was convicted of aggravated robbery with a deadly weapon [knife] and received probation. His probation was revoked in 1993 based on his commission of the first sexual assault conviction listed below. Mares has two sexual assault convictions, both arising out of conduct occurring during a six-month period in 1992. His two sexual assault convictions were proven through copies of the indictments and judgments, and consist of:

1st sexual assault offense – In 1993, Mares pled guilty to aggravated sexual assault of a child (A.G., 7 years old) committed on November 2, 1992, and was sentenced to 25 years in prison in accordance with his plea bargain. Count I, Paragraph A of the Indictment alleged penetration of A.G.'s female sexual organ by Mares's sexual organ; Paragraph B alleged penetration of A.G.'s anus by Mares's sexual organ.

2nd sexual assault offense – In 1999, Mares pled guilty to aggravated sexual assault of a child (A.R., 7 years old) committed on June 1, 1992, and was sentenced to seven years in prison in accordance with his plea bargain. Mares was not indicted on this offense until 1998 (when he was in prison), but the offense occurred prior to his first sexual assault offense. Count I, Paragraph A of the Indictment alleged penetration of A.R.'s female sexual organ by Mares's sexual organ; Paragraph B alleged contact between the two sexual organs.

Mares stated that he committed the sexual assaults because he was high on drugs and alcohol. He stated he could not recall many of the details of the sexual assaults, but did admit anal penetration in the first sexual assault and recalled the child crying and bleeding from the anus. Mares completed a nine-month sex offender treatment program while in prison as a pre-

condition to parole. Mares testified that, in 1997 while in prison, he "quit everything," meaning he stopped doing drugs and has no need for substance abuse treatment. Mares stated that, at his current age of 56 years old, he has "absolutely no sex drive" and "no sexual issues" that need to be addressed in treatment.

In addition to Mares's testimony, the jury heard expert testimony by Dr. Michael R. Arambula, the State's expert and a licensed medical doctor and forensic psychiatrist, and by Dr. Marisa Mauro, the defense expert and a licensed psychologist and sex offender treatment provider. Both Dr. Arambula and Dr. Mauro testified they were retained to evaluate Mares and to form an opinion as to whether he had a "behavioral abnormality" as defined in the SVP Act. Both experts had extensive experience with SVP evaluations and applied the standard methodology for forensic psychiatric evaluations under the SVP Act, which consists of a face-to-face evaluation of the defendant and review of the historical records, including the details of the sexual offenses, past criminal history, past mental health evaluations, etc. In sum, Dr. Arambula diagnosed Mares with anti-social personality disorder and "paraphilia (i.e., sexual deviance) with features of sexual sadism and pedophilia," and stressed Mares's high degree of denial in concluding that Mares has a "behavioral abnormality" that makes him likely to engage in a predatory act of sexual violence in the future. Dr. Arambula testified he diagnosed only "features" of sadism and pedophilia because the records did not establish that Mares had exhibited such conditions for a period of six months or longer, as required for a clinical diagnosis of sadism or pedophilia. Dr. Arambula testified that the two major risk factors for sexually reoffending are sexual deviance and anti-social personality disorder.

The defense expert, Dr. Mauro, agreed that Mares has anti-social personality disorder, but disagreed that Mares meets the definition of someone with paraphilia or sexual deviance; however, she agreed some of his past acts were sexually deviant. Dr. Mauro also disagreed that Mares is a sexual sadist or a pedophile, stating that engaging in one or two acts of sexual behavior with children does not make a person a pedophile. She also testified there is no such diagnosis of "features" of sadism and pedophilia because the person either meets the diagnosis criteria or not. Dr. Mauro also disagreed that Mares's inability to recall details of the sexual assaults indicated an embedded denial system rather than being due to his intoxicated state at the time of the offenses. Dr. Mauro concluded that Mares does not suffer from a "behavioral abnormality" that makes him likely to engage in a future predatory act of sexual violence. The jury found that Mares met the definition of a "sexually violent predator," as defined in the jury charge, which tracked the statutory definitions of both elements. Mares appealed.

## ANALYSIS

On appeal, Mares raises four issues: (1) the trial court erred in permitting Dr. Arambula to testify about the details of Mares's two sexual assault offenses based on his review of the records because it was "unreliable hearsay that was more prejudicial than probative;" (2) the evidence is insufficient to support commitment because Dr. Arambula's diagnosis that Mares suffers from unspecified paraphilia (i.e., sexual deviance) with "features" of sadism and pedophilia was not probative evidence; (3) the evidence is insufficient because Dr. Arambula failed to make a causal connection between Mares's diagnosis/condition and the likelihood he will sexually reoffend; and (4) the trial court erred by rejecting Mares's request to read to the jury the State's responses to his requests for admissions.

### Dr. Arambula's Testimony: Details of Mares's Two Sexual Assault Offenses

Mares argues the trial court erred in allowing Dr. Arambula to testify about the factual details of Mares's past sexual assaults based on his review of the records. Specifically, Mares challenges Dr. Arambula's testimony that during Mares's first sexual assault offense the 7-year old girl "bled and cried" while he penetrated her anally, but that Mares did not stop and continued penetrating her until he ejaculated. Dr. Arambula also testified the victim made a statement that Mares slapped her, and the medical exam showed bruising consistent with being slapped. With respect to the second sexual assault, Dr. Arambula testified there was evidence that Mares offered the victim "candy apples," i.e., engaged in grooming conduct, prior to the offense. On appeal, Mares asserts these "unreliable hearsay details of his offenses were more prejudicial than probative" and were thus inadmissible under Rules 403 and 705(d). *See* TEX. R. EVID. 403 (providing for the exclusion of relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice); *id.* 705(d) (providing that if the underlying facts or data of an expert's opinion are otherwise inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value is outweighed by their prejudicial effect).

We review a trial court's ruling admitting or excluding evidence in a civil commitment proceeding for an abuse of discretion. *In re Commitment of Browning*, 113 S.W.3d at 866. A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

At a pre-trial hearing on Mares's motion in limine concerning the details of his past offenses, Dr. Arambula testified that the details of the offenses are an important part of the standard methodology used in forensic psychiatric evaluations to determine whether a purported predator has a "behavioral abnormality." He explained that the details of the sexual assault, such as the force or violence used and the victim's response during the assault, "provide clinical information to me about predominantly dynamic risk factors that are involved in the assessment of sex offenders." The victim's experience and perspective is important because sadism "encompasses a [victim's] perspective of physical suffering, as well as psychological suffering, that's fused with sexual arousal." Dr. Arambula further explained that the amount of details the defendant can recall when he interviews him indicates the degree of denial present, e.g., the fewer details reported, the more embedded the defendant's denial system. Dr. Arambula stated he obtained the details of the offenses from his review of the records in the investigative file (which included the victims' statements), from his face-to-face interview with Mares, and from his review of another psychologist's prior evaluation and actuarial testing of Mares. At the conclusion of the hearing, the trial court ruled that Dr. Arambula could rely on the details of the offenses compiled from the sources he listed because "the rules allow it [and] it is commonly accepted practice in the scientific field," and the testimony is relevant and admissible. The trial court also ruled that the details of the sexual assaults were "very prejudicial," but also "very probative to the ultimate issues in this case." Defense counsel did not request a hearing under the rules of evidence on Dr. Arambula's qualifications and the reliability of his underlying data, even though the trial court offered.

At trial, Mares objected to Dr. Arambula's testimony about the details of his sexual assault offenses as "unreliable hearsay" and as "more prejudicial than probative" under Rule 403 and Rule 705(d). Tex. R. Evid. 802, 403, 705(d). When the trial court overruled his objections, he requested a running objection. Dr. Arambula was permitted to testify that his review of the records revealed that the first young girl "bled and cried" while Mares was anally penetrating her and that Mares did not stop but continued with the act until the point of completion, i.e., ejaculation. During his interview with Dr. Arambula, Mares admitted anally penetrating the child, A.G. Mares also corroborated that she was crying and that he did not stop, but "finished" the sexual assault. Dr. Arambula viewed the bleeding as confirmation of a physical injury to the child, one of the components of sadism, which he defined as sexual arousal with the infliction of pain or humiliation. In addition, Dr. Arambula testified that he read in the records regarding the second sexual assault that Mares had given the child victim "candy apples" beforehand.

The State asserts that jury trials under the SVP Act routinely focus on the details of the defendant's sexual offense history as part of the State's proof that the defendant suffers from a "behavioral abnormality." Our review of the SVP cases from our sister courts confirms that assertion. Indeed, the Beaumont court of appeals has addressed and rejected a similar claim that the hearsay details of the purported predator's sexual assault offenses were more prejudicial than probative. *See In re Commitment of Day*, 342 S.W.3d 193, 197-99 (Tex. App.—Beaumont 2011, pet. denied). In *Day*, the court held the experts were entitled to consider and testify to the factual details of past offenses contained in the records as part of their "behavioral

abnormality" assessment. *Id.* at 199. The court stated that permitting "each expert to explain which facts were considered and how those facts influenced his evaluation assisted the jury in weighing each experts' testimony and the opinion each offered regarding the ultimate issue in the case." *Id.* In the context of determining that the Texas SVP statute is civil, not punitive, the Beaumont court of appeals explained that, "the offense showing under the Texas statute . . . [is] received primarily to show the accused's mental condition and to aid in the prediction of future behavior." *Mullens*, 92 S.W.3d at 884. The Austin court of appeals has also addressed the issue, stating that, "the primary purpose of requiring proof of prior convictions is evidentiary. In other words, a person's history of sexually violent conduct is highly relevant to whether he suffers from a behavioral abnormality making it difficult for him to control his impulses to commit sexually violent offenses." *Browning*, 113 S.W.3d at 860, 866 (holding that, "because of its evidentiary importance, we cannot say that the trial court abused its discretion by failing to rule that any 'unfair prejudice' raised by his prior convictions substantially outweighed its probative value"). While these opinions from our sister courts are not binding on this court, we find them persuasive in their analysis of the high probative value and admissibility of testimony about the offense details in view of the purpose of the SVP Act to protect society from sexually violent predators with a behavioral abnormality that predisposes them to future predatory acts. *See id.* at 861 (purpose of the statute is not only to protect the public, but also to provide treatment for such difficult-to-treat conditions). Mares has not shown that the prejudicial effect of the challenged testimony outweighed the high probative value of the evidence.

■ As to the hearsay nature of the testimony, the jury was instructed that, "[c]ertain hearsay information contained in records reviewed by the experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the experts' opinion and cannot be considered as evidence to prove the truth of the matter asserted." We must presume the jury followed the instruction; therefore, any potential harm arising from Dr. Arambula's testimony concerning the factual details of the sexual assaults was cured by the limiting instruction. *See Day*, 342 S.W.3d at 199.

We conclude the trial court did not abuse its discretion in permitting Dr. Arambula to testify about the factual details of Mares's past sexual assaults contained in the records he reviewed in relation to the second prong of the SVP evaluation.

### Sufficiency of the Evidence

Mares does not generally challenge the legal and factual sufficiency of the evidence to support the jury's verdict that he is a sexually violent predator. Rather, Mares makes two specific arguments that the evidence is legally and factually insufficient to support the second prong of a "sexually violent predator," i.e., that he suffers from a behavioral abnormality that makes him likely to sexually reoffend—(i) that, to be probative, Dr. Arambula's diagnosis had to be listed in the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-V"), and (ii) that evidence of a "causal connection" between the diagnosis or condition and the likelihood of reoffending was necessary.

■ Because the SVP statute requires the State to prove "beyond a reasonable doubt" that the person is a sexually violent predator, as defined in the statute, we apply the legal sufficiency

standard used in criminal cases. *Mullens*, 92 S.W.3d at 885 (holding the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of legal sufficiency applies in civil commitment proceedings because the statute places the criminal burden of proof on the State); *see* TEX. HEALTH AND SAFETY CODE ANN. § 841.062(a) (West 2010). Thus, we determine whether, viewing the evidence in the light most favorable to the verdict, a rational factfinder could have found, beyond a reasonable doubt, all the elements required for commitment under the SVP statute. *Mullens*, 92 S.W.3d at 885. The jury remains the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* at 887 (citing *Barnes v. State*, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994)). "In reviewing the factual sufficiency of the evidence in a civil case in which the burden of proof is beyond a reasonable doubt, an appellate court weighs [all] the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Day*, 342 S.W.3d at 213 (applying the factual sufficiency standard established by *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 662 (1951)).

### Dr. Arambula's Diagnosis

■ Mares asserts the evidence is legally and factually insufficient to establish that he has a behavioral abnormality that makes him likely to sexually reoffend because the DSM-V does not list Dr. Arambula's diagnosis. Specifically, Mares contends that Dr. Arambula's diagnosis of Mares as having "unspecified or specified paraphilia with features of sexual sadism and features of pedophilia" lacks probative value because "features" of sadism and pedophilia are not referred to in the DSM-V. In support, Mares cites to his expert's

testimony that "for mental health reasons, a diagnosis typically is made from the DSM," and the DSM-V does not refer to "features." Mares also cites Dr. Mauro's testimony that she had never heard of the term "features of sexual sadism or pedophilia" until it was used in another recent SVP case.

■ The State correctly replies that the SVP Act does not require a medical or mental health diagnosis before civil commitment. The Texas Supreme Court stated in *Bohannan* that the Act does not require the expert conducting the SVP evaluation to be licensed as a medical doctor or psychologist as long as the expert is otherwise qualified to perform the evaluation. *In re Commitment of Bohannan*, 388 S.W.3d 296, 306 (Tex. 2012), *cert. denied*, ⸺ U.S. ⸺, 133 S.Ct. 2746, 186 L.Ed.2d 202 (2013). The court noted the legislature's expression of its view that medical and psychiatric testimony is unnecessary in SVP proceedings. *Id.* at 303-04; *see* TEX. HEALTH & SAFETY CODE ANN. § 841.1461 (added in response to a court of appeals opinion stating to the contrary). In support of its holding, the court explained, "[a] medical diagnosis of a person's mental health may certainly inform an assessment of whether he has an SVP's behavioral abnormality, but the principal issue in a commitment proceeding is not a person's mental health but whether he is predisposed to sexually violent conduct." *Bohannan*, 388 S.W.3d at 306.

Mares acknowledges that a mental health diagnosis is not required, but contends that if the State's expert chooses to give a mental health diagnosis, then the diagnosis must be listed in the DSM-V to be considered probative evidence. However, Mares cites no authority to support this assertion. As the State points out, in *Day*, Dr. Arambula gave the same diagnosis of

"not otherwise specified paraphilia ... with features of sadism ... and antisocial personality" disorder. *See Day*, 342 S.W.3d at 198, 204-05. The court in *Day* engaged in a lengthy sufficiency analysis, both legal and factual, of Dr. Arambula's methodology, evaluation, and diagnosis, and concluded that his testimony about the diagnosis "present[ed] a reasoned judgment based upon established research and techniques for his profession and not the mere *ipse dixit* of a credentialed witness." *Id.* at 204-06, 217. The court noted, "Arambula discussed the criteria for paraphilia in the DSM-IV, applied it specifically to Day, and explained for the jury what factors in Day's history and interview Arambula considered in reaching his conclusion." *Id.* at 206. Similar to Mares's case, Dr. Arambula testified that Day's sexually violent behavior "was repeated just three times within those four years, so [he] resorted to the more general diagnosis of paraphilia with *features* of sadism and not specifically sadism." *Id.* at 205 (emphasis added).

Here, Dr. Arambula presented substantially the same explanation in support of his diagnosis to Mares's jury as he did in *Day*. Dr. Arambula testified that he referred to the criteria listed in the DSM-V and applied those criteria to the facts he discovered about Mares from his interview and the records in formulating a diagnosis. Dr. Arambula explained to the jury that "features" means the person has a history of the condition, but it does not meet the specific criteria for a clinical diagnosis set forth in the DSM-V; in Mares's case, the records did not show the conditions of sadism and pedophilia were continuously present for six months. *Cf. id.* at 204-05. In addition, Dr. Arambula testified about the risk factors and actuarial data he considered in formulating his opinion that Mares suffers from a behavioral abnormality that makes him likely to commit a future act of sexual violence.

We conclude that Dr. Arambula's opinion that Mares suffers from unspecified paraphilia with features of sadism and anti-social personality disorder constitutes probative evidence on the issue of whether Mares suffers from a behavioral abnormality as defined in the SVP Act. *See id.* at 206. It was the jury's role as factfinder to evaluate the experts' credibility and weigh their conflicting opinions about whether Mares has a behavioral abnormality that predisposes him to sexually reoffend; the evidence is legally sufficient to support the jury's verdict based on Dr. Arambula's opinion. *See Mullens*, 92 S.W.3d at 887 (in legal sufficiency review, court defers to jury's assessment of credibility). We further conclude that Dr. Arambula's testimony and opinion were not "so weak that it was unreasonable for the jury to consider it" in reaching its verdict; therefore, the evidence is factually sufficient to support the jury's verdict. *See Day*, 342 S.W.3d at 217.

*"Causal Connection"*

■■■ Mares argues the evidence is legally and factually insufficient to support his commitment because Dr. Arambula failed to testify to a "causal connection" between Mares's condition/diagnosis and the likelihood he would sexually reoffend. He stresses that Dr. Mauro did testify that she found no condition in Mares that has a "causal link" to causing him to engage in sexually violent acts. The State replies that the statutory language does not require any such causal connection. Rather, under the statute, it is the existence of the "behavioral abnormality" that creates the likelihood of sexually predatory acts in the future.

The statutory language and caselaw do not support Mares's position. The SVP Act defines the legal term "behavioral abnormality" as a "condition that ... pre-

disposes the person to commit a sexually violent offense." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2). The "condition" does so by "affecting a person's emotional or volitional capacity." *Id.* Thus, under the plain statutory language, it is the existence of the condition itself that creates a high likelihood of sexually reoffending. In *Bohannan*, the Texas Supreme Court expressly rejected the lower court's "bisection of the statutory definition of behavioral abnormality" and abrogated a Beaumont court of appeals' opinion holding that "behavioral abnormality" has two separate components: an acquired or congenital condition and a predisposition to commit a sexually violent offense." *Id.* 388 S.W.3d at 302 (abrogating *In re Dodson*, 311 S.W.3d 194 (Tex. App.—Beaumont 2010, pet. denied)). The *Bohannan* opinion characterized the SVP analysis of whether a person "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence" as "a single, unified issue." *Id.* at 303. The Court explained,

> Boiling it down, a behavioral abnormality is 'a ... condition that ... predisposes' sexually violent conduct. The modifier, 'predisposes,' qualifies and describes 'condition.' The required condition *is* the predisposition. The condition has no other qualities, other than that it can be congenital or acquired. The condition and predisposition are one and the same ... The condition and predisposition cannot be separate things....

*Id.* at 302-03. The court further stated that "the import of predisposition and likelihood is exactly the same: increased risk." *Id.* at 303.

Mares acknowledges that in *Bohannan*, the Texas Supreme Court "held that the required condition and the predisposition [to reoffend] are one in the same," but, without citing authority on point, still asserts a causal link between the condition and the likelihood of reoffending must be separately established. We reject Mares's contention. Under *Bohannan*, it is clear that the behavioral abnormality, i.e., the condition, "is" the predisposition to reoffend, and the statutory language does not require independent evidence of a "causal link" between the condition and the predisposition to reoffend. It is a single issue, not two separate elements. *Id.* at 302-03.

### Exclusion of State's Responses to Requests for Admission

██ In his last issue, Mares argues the trial court abused its discretion by refusing to allow him to read to the jury the State's responses to his requests for admission, over the State's objection. The State replies that Mares's requests for admission were improper because they asked the State to admit it had "no evidence" of certain matters, e.g., that Mares received any discipline reports for sexual misconduct in prison, that Mares engaged in sexual misconduct prior to 1992 or during the 24 years preceding the commitment proceeding.

Even assuming it was error to exclude the State's responses, Mares has not shown how he was harmed. At the time of his request to read the responses, the State had completed its case-in-chief and the jury was able to determine whether the State had presented any evidence of sexual misconduct while in prison, before 1992, or during the preceding 24 years. In addition, Mares had already testified on those matters and denied any sexual misconduct during those time frames. Reading the responses to the requests for admission would have been merely cumulative; therefore, any error was harmless. TEX. R. APP. P. 44.1.

### CONCLUSION

Based on the foregoing reasons, we overrule all of Mares's issues on appeal

and affirm the trial court's judgment and order of commitment.