

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-17-00082-CV

**IN RE COMMITMENT OF** Estevan **RIOJAS**

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2016-CI-02857
The Honorable Lamar McCorkle, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:     Marialyn Barnard, Justice
            Luz Elena D. Chapa, Justice
            Irene Rios, Justice

Delivered and Filed:  November 1, 2017

AFFIRMED

Based on a jury's finding that Estevan Riojas is a sexually violent predator (SVP), the trial court ordered him to be civilly committed pursuant to section 841.081 of the Texas Health and Safety Code ("Code").  On appeal, Riojas challenges the legal and factual sufficiency of the evidence to support the jury's finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.  Riojas also contends the trial court abused its discretion in admitting certain testimony.  We affirm the trial court's judgment.

### SEXUALLY VIOLENT PREDATOR ACT

Under chapter 841 of the Code, a trial court must commit a person for treatment and supervision if a factfinder determines the person is a SVP.  TEX. HEALTH & SAFETY CODE ANN. § 841.081(a) (West 2017).  A person is a SVP if he "(1) is a repeat sexually violent offender; and

(2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id*. at § 841.003(a). A person is a repeat sexually violent offender if he "is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses...." *Id*. at § 841.003(b). A "behavioral abnormality" means "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. at § 841.002(2).

**SUFFICIENCY OF THE EVIDENCE**

In his second and third issues, Riojas challenges the legal and factual sufficiency of the evidence to support the jury's finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Riojas does not challenge the jury's finding that he is a repeat sexually violent offender.

A.      Standard of Review

Because the State was required to prove "beyond a reasonable doubt" that Riojas is a SVP, we apply the legal sufficiency standard used in criminal cases. *In re Commitment of Mares*, 521 S.W.3d 64, 71-72 (Tex. App.—San Antonio 2017, pet. denied); *In re Commitment of Short*, 521 S.W.3d 908, 911 (Tex. App.—Fort Worth 2017, no pet.). Viewing the evidence in the light most favorable to the verdict, we determine whether any rational trier of fact could have found, beyond a reasonable doubt, each of the elements required for commitment. *In re Commitment of Mares*, 521 S.W.3d at 72; *In re Commitment of Short*, 521 S.W.3d at 911. "'In reviewing the factual sufficiency of the evidence in a civil case in which the burden of proof is beyond a reasonable doubt, an appellate court weighs [all] the evidence to determine whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering

a new trial.'" *In re Commitment of Mares*, 521 S.W.3d at 72 (quoting *In re Commitment of Day*, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied)).

B.      Evidence

The jury in this case heard testimony from Riojas and from three experts.

1.      Dr. Jason Dunham

Dr. Jason Dunham, a forensic psychologist, testified he specializes in sex offender evaluations and sex offender risk assessment which involves determining the likelihood or risk of a person reoffending. In the underlying case, Dr. Dunham was asked to offer an opinion regarding whether Riojas has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Dunham explained the term "likely" is not defined in the Code but "means there's a pretty good chance something is going to happen." Dr. Dunham stated he finds individuals do not have behavioral abnormalities in approximately one-third of the evaluations he performs. Dr. Dunham's methodology in undertaking an evaluation is to review a "referral packet," conduct a face-to-face evaluation of the individual, perform and review testing and additional records, and write a report. Dr. Dunham stated the same methodology is used by all experts conducting evaluations. The "referral packet" generally contains basic information regarding the individual's convictions and any other charges against the individual, disciplinary reports from the prison system, parole case summaries, and the report from the individual's clinical interview with the sex offender treatment program. After conducting the face-to-face interview, Dr. Dunham then receives additional records.

In Riojas's case, Dr. Dunham testified the face-to-face interview was shorter than normal because Riojas denied the offenses and did not elaborate on his answers. Riojas's additional records included more detail regarding his convictions, his nonsexual criminal history, and witness depositions. Dr. Dunham stated he relied on the facts and data in Riojas's records in forming the

basis of his opinion that Riojas suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

One of the factors Dr. Dunham considered was the details of Riojas's sexual convictions. Dr. Dunham explained the type of victims, the timing and frequency of the offenses, and the circumstances of the offenses all can correlate to higher risks of reoffending. Dr. Dunham testified Riojas was convicted of two counts of aggravated sexual assault of a child involving the three-year-old granddaughter of Riojas's girlfriend with whom he was living. The offenses occurred over a period of five months. Riojas was fifty-two when he began the assaults. Dr. Dunham stated the offenses against the three-year-old girl surfaced after Riojas was charged with three counts of aggravated sexual assault against his five-year-old granddaughter. The five-year-old girl reported that Riojas would perform oral sex on one girl and then have that girl get the other girl and then also perform oral sex on the other girl. With the five-year-old girl, Riojas would tie her arms and sexually assault her by penetrating her vagina. Riojas would also cover her mouth with duct tape because she would scream for her mom and dad. With the three-year-old girl, Riojas put his finger inside her vagina on multiple occasions and also put a foreign object inside her vagina as well as a yellow substance that caused her to burn. Dr. Dunham stated he believed the girls' outcries were credible based on the details provided given their age, the changes in the five-year-old girl's behavior, the corroboration of details by the other victim, the family's belief in the victims' credibility, and Riojas's confession. When Dr. Dunham questioned Riojas about the offenses, he denied anything happened; however, Dr. Dunham stated he believed Riojas confessed to the offenses in his police interview based on the manner in which he answered the detective's questions. Dr. Dunham testified he believed Riojas engaged in the offenses for the primary purpose of victimization and the offenses were predatory because they involved an intentional act toward a victim. Dr. Dunham also referred to a report in the records that Riojas offended against

his little sister when she was younger; however, because he did not have more detail regarding that offense, he did not give it as much weight.

Dr. Dunham stated he also considered nonsexual criminal history in determining behavioral abnormality because it impacts anti-social orientation or the willingness to violate the law which increases the risk of reoffending. Dr. Dunham testified Riojas had several nonsexual criminal offenses which reflected an attitude of "snubbing his nose to … the law." For example, Riojas had several convictions for criminal nonsupport of his children and a few convictions for possession of marijuana.

Dr. Dunham testified he found Riojas had several risk factors for reoffending including: (1) multiple types of sexual offenses against multiple victims; (2) the duration of the offenses over at least five months; (3) the callousness of the offenses, including the duct taping of the five-year-old girl's mouth and the threats he used; (4) the victims ages and their relationship to Riojas; (5) his commission of the offenses while in a committed sexual relationship with his girlfriend; (6) his sexual preoccupation demonstrated by engaging in sex with prostitutes and having affairs with married women; (7) his anti-social orientation and the diverse number of crimes in his criminal history; (8) his drug and alcohol issues; and (9) his lack of remorse and empathy. Although Riojas also had a few positive factors that would reduce the risk of his reoffending, including his positive behavior in prison, Dr. Dunham believed Riojas has pedophilic disorder that affects his emotional and volitional capacity and testified Riojas's risk level for reoffending is moderate to high.

2.      Estevan Riojas

Riojas testified he was originally charged with five different counts of aggravated sexual assault of a child and pled no contest to two counts. As a result of his plea, the other three counts were dropped. The victim of the two counts to which Riojas pled no contest was the three-year-old granddaughter of his girlfriend. Riojas stated the three-year-old girl was living with her

grandmother and Riojas, and Riojas considered himself to be a father figure to her. Riojas testified he slept in the same bed with his girlfriend and the three-year-old girl. Riojas admitted he slept in the nude, but stated he was covered with a sheet, and his girlfriend and the three-year-old girl were covered with a quilt. Riojas further admitted he kissed the three-year-old girl on her lips and nibbled on her ears. Riojas denied engaging in any of the sexual acts with which he was charged. Although Riojas admitted he confessed to the acts when interviewed by a detective, he testified he had nine years in prison to evaluate everything and "can honestly say I did not do it." Riojas testified he confessed because he was concerned the police would otherwise search his house, and he had three pounds of marijuana and a scale at his house.

Riojas testified regarding the various educational programs he completed while in prison. Riojas denied being attracted to children or to being at risk to reoffend when released from prison.

### 3. Dr. David Self

Dr. Self, a medical doctor trained in forensic psychiatry, also evaluated Riojas to determine if he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dr. Self defined the term "likely" to mean "more than a mere possibility." Dr. Self had performed about eighty or ninety evaluations for behavioral abnormality and found no behavioral abnormality in twenty cases. Dr. Self's methodology in undertaking an evaluation is to review a "referral packet," conduct a face-to-face evaluation of the individual, review the testing and additional records, and write a report. Dr. Self stated his methodology is the same methodology used by other experts conducting evaluations. Dr. Self testified he relied on the facts and data contained in the records in forming the basis of his opinion that Riojas suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dr. Self testified he relied on the details of Riojas's sexual convictions in forming his opinion. Dr. Self's testimony regarding the details of the convictions was similar to Dr. Dunham's

testimony. Dr. Self also testified the records contained a vague illusion to the sexual abuse of another family member, but he did not consider it because it was too vague. Based on his evaluation, Dr. Self identified the following risk factors that show an increased risk for Riojas to offend in the future: (1) Riojas suffers from pedophilic disorder, as defined by the Diagnostic and Statistical Manual compiled by the American Psychiatric Association and relied on by experts in the field, which is a chronic disorder that does not go away; (2) Riojas's denial that the sexual assaults occurred; (3) Riojas has adult anti-social behavior as evidenced by his "instances of breaking the law, lying, irresponsibility, stepping and trodding on the rights of other people;" and (4) Riojas's alcohol and marijuana abuse. Dr. Self also identified a few factors that reduce Riojas's risk for reoffending including: (1) his good work record; (2) his good behavior in prison; and (3) his reporting that he has drawn closer to the Christian faith. After considering all of the various factors, Dr. Self reaffirmed his opinion that Riojas suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence; however, Dr. Self also agreed mistakes are made with respect to the clinical analysis of an individual.

4.    Dr. John Tennison

Dr. John Tennison, a medical doctor specializing in forensic psychiatry, was retained by Riojas's attorneys to evaluate him. Dr. Tennison had conducted approximately 50 evaluations and found behavior abnormality in approximately 20% of his evaluations. Dr. Tennison explained the term "likely" is not statutorily defined; however, he believed the most common definition was "greater than a 50 percent probability." Dr. Tennison also explained in order for a person to engage in a "predatory act," the person had to have knowledge that they were victimizing another person. Dr. Tennison further explained a behavioral abnormality is a "congenital or acquired condition that creates serious difficulty controlling behavior which in turn leads to sexually violent offenses or the likelihood of committing such predatory acts in the present or future." Dr. Tennison

explained his methodology involved reviewing records, interviewing Riojas, and reviewing additional information including depositions of other experts. Dr. Tennison stated he relied on the information in the records in reaching his opinion that Riojas does not have a behavioral abnormality, listing the following reasons for his opinion: (1) using Riojas's age in a statistical analysis showed his risk of reoffending was between zero and three percent; (2) the victims had a relationship with Riojas and studies show the rate of recidivism against children related to the offender drops to virtually zero by age 60, and Riojas was 63; (3) the evidence was insufficient to diagnose Riojas with pedophilic disorder; however, he understood how some experts would reach that diagnosis based on a "rather simplistic" reading of the criteria in the Diagnostic and Statistical Manual; and (4) Riojas's good behavior in prison which was consistent with him not having anti-social personality disorder. Dr. Tennison also testified Riojas had several protective or negative risk factors that decreased his change of reoffending including: (1) his age at the time of the offenses and his current age; and (2) his relationship to the victims.

C.    Analysis

The bulk of Riojas's argument focuses on the term "likely" as it relates to the jury's finding that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Riojas asks this court to reject the Beaumont court's opinions construing the term to include "more than a mere possibility" and argues the term should be construed to mean "more likely than not." Riojas also argues that portions of the testimony invited the jury to speculate and to consider unreliable gossip. Finally, Riojas argues only the "worst of the worst" should be civilly committed because chapter 841 is focused "a small but extremely dangerous group of sexually violent predators."

Having reviewed the case law, we agree with our sister court in Beaumont that the term "likely to engage" as used in the statute does not require an expert to find a specific percentage of

risk or that the statute should be interpreted to mean "more likely than not." *In re Commitment of Terry*, No. 09-15-00500-CV, 2016 WL 7323299, at \*13 (Tex. App.—Beaumont Dec. 15, 2016, no pet.) (mem. op.) (quoting *In re Commitment of Muzzy*, No. 09-13-00496-CV, 2014 WL 1778254, at \*2 (Tex. App.—Beaumont May 1, 2014, pet denied (mem. op.)). Instead, an expert's definition of the term "likely" as used in the statute goes to the weight the jury decides to give the expert's testimony. *Id*. In this case, the jury heard testimony from three experts who each provided their own definition of the term "likely." Although Dr. Tennison detailed reasons for challenging Dr. Dunham's and Dr. Self's opinions, and Dr. Dunham and Dr. Self detailed reasons for challenging Dr. Tennison's opinion, it was within the province of the jury to assess the credibility of the witnesses and determine the weight to give their testimony. *See In re Commitment of Mares*, 521 S.W.3d at 73 (noting "[i]t was the jury's role as factfinder to evaluate the experts' credibility and weigh their conflicting opinions"); *In re Commitment of Kalati*, 370 S.W.3d 435, 439 (Tex. App.—Beaumont 2012, pet. denied) (noting jury is sole judge of the credibility of the witnesses and the weight to be given their testimony). In a sufficiency review, we do not reweigh the evidence or substitute our judgment for that of the jury. *See In re Commitment of Stuteville*, 463 S.W.3d 543, 552 (Tex. App.—Houston [1st Dist.] 2015, pet. denied); *In re Commitment of Day*, 342 S.W.3d at 207. Having reviewed all of the evidence presented, we hold the evidence is legally and factually sufficient to support the jury's finding that Riojas suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See In re Commitment of Terry*, 2016 WL 7323299, at \*13 ("We have previously concluded in other SVP civil commitment appeals that Dr. Self's working definition of likely being defined as 'more than a mere possibility' does not render the evidence in an SVP civil commitment case legally or factually insufficient."). Riojas's second and third issues are overruled.

**ADMISSIBILITY OF EVIDENCE**

In his first issue, Riojas contends the trial court erred in admitting as "basis" evidence testimony that he "offended against his little sister when she was younger" because the probative value of the evidence was outweighed by its prejudicial effect.

We review a trial court's admission of evidence in a civil commitment proceeding for an abuse of discretion. *In re Commitment of Mares*, 521 S.W.3d at 69; *In re Commitment of Browning*, 113 S.W.3d 851, 865 (Tex. App.—Austin 2003, pet. denied). A trial court abuses its discretion if it acts without regard for any guiding rules or principles. *In re Commitment of Mares*, 521 S.W.3d at 69.

Under Texas Rule of Evidence 705, an expert may disclose the underlying facts or data upon which the expert bases his opinion if it is of a type relied upon by experts in the field in forming opinions on the subject unless "the probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect." TEX. R. EVID. 705(d); *In re Commitment of Talley*, No. 01-16-00572-CV, 2017 WL 1536478, at *4 (Tex. App.—Houston [1st Dist.] Apr. 27, 2017, no pet.) (mem. op.); *In re Commitment of Anderson*, 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied). Texas law presumes that relevant evidence is more probative than prejudicial. *In re M.G.N.*, 491 S.W.3d 386, 403 (Tex. App.—San Antonio 2016, pet. denied); *In re Commitment of Winkle*, 434 S.W.3d 300, 309 (Tex. App.–Beaumont 2014, pet. denied). "Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis, commonly, but not necessarily, an emotional one." *In re Commitment of Anderson*, 392 S.W.3d at 882. In balancing whether the probative value of evidence is outweighed by its prejudicial effect, a trial court's balancing test includes, but is not limited to, the following considerations: (1) the probative value of the evidence, (2) the potential for the evidence to impress

the jury in some irrational way, (3) the time needed to develop the evidence, and (4) the proponent's need for the evidence. *Id*.

After Dr. Dunham testified regarding the five counts alleged against Riojas resulting in his convictions, Dr. Dunham was asked whether he saw any allegations of sexual misconduct in Riojas's records other than those involving the five counts. After the trial court overruled an objection made by Riojas's attorney that the answer "would be highly prejudic[ial] compared to the probative value," Dr. Dunham testified a family member reported Riojas "offended against his little sister when she was younger." Dr. Dunham stated the report did not factor into his opinion as heavily as the charged offenses because he did not have any additional detail, including when the event occurred. Instead, Dr. Dunham just considered it as a possibility that "it's extended even further in his life than we know about."

Dr. Self also was asked whether Riojas's records contained any other allegations that he took into consideration other than the allegations in the charged offenses. Dr. Self testified "there was a vague illusion to the sexual assault or abuse of another family member that were so vague that I didn't … consider it." Dr. Self stated he believed "we need to have more confidence than that."

Applying the balancing test factors to the testimony, the evidence was probative of one of the bases for Dr. Dunham's opinion and was needed for that purpose. In addition, the time needed to develop the evidence was extremely limited. Finally, given the absence of details, Dr. Dunham's testimony that he gave the evidence very little weight, and Dr. Self's testimony that he did not consider it because it was so vague, the evidence had little potential to impress the jury in some irrational way. Therefore, the trial court did not abuse its discretion in determining the probative value of the evidence in helping the jury evaluate the experts' opinions outweighed its prejudicial effect.

Even if we assume, however, that the trial court abused its discretion in admitting the testimony, we would hold the admission of the testimony was not reversible error.  As required by rule 705, the trial court gave the jury a limiting instruction stating the evidence was admitted only for the purpose of showing the basis of the experts' opinions and could not be considered as evidence to prove the truth of the matter asserted.  *See* TEX. R. EVID. 705(d).  "We must presume the jury followed the instruction; therefore, any potential harm arising from [the testimony] was cured by the limiting instruction."  *In re Commitment of Mares*, 521 S.W.3d at 71.

Riojas's first issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Irene Rios, Justice