

# NUMBER 13-18-00256-CV

# COURT OF APPEALS

# THIRTEEN DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN RE THE COMMITMENT OF JUAN VELA

On appeal from the 214th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Tijerina**
**Memorandum Opinion by Justice Benavides**

By a single issue, appellant Juan Vela appeals his civil commitment as a sexually violent predator.   *See* TEX. HEALTH & SAFETY CODE ANN. § 841.003.   He challenges the State's use of evidence of details of his 1980 offenses and 1995 criminal convictions as part of the State's expert testimony on the grounds that the probative value of the evidence was substantially outweighed by its prejudicial nature.   We affirm.

I.   BACKGROUND

## A.   Prior Sexual Convictions

Vela was convicted on February 20, 1995, in Cause No. 93-CR-1379-F in Nueces County, Texas of aggravated sexual assault of a child which occurred on or about March 9, 1993, and he was sentenced as a habitual felony offender.   TEX. PENAL CODE ANN. §§ 22.021, 12.42.   On that same date, Vela was also convicted of aggravated sexual assault of a child which occurred on or about January 9, 1993.   *See id.* § 22.021.   Vela was sentenced to concurrent forty year sentences in the Texas Department of Criminal Justice—Institutional Division.   In 1981, Vela was convicted of sexual conduct with a minor and sentenced to seven months' probation in Arizona.

## B.   Civil Commitment Proceeding

The State filed its original petition seeking Vela's civil commitment in June 2017 on the grounds that he qualifies as a sexually violent predator pursuant to Chapter 841 of the Texas Health and Safety Code.   *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153; *In re Commitment of Gomez*, 535 S.W.3d 917, 919 (Tex. App.—Corpus Christi–Edinburg 2017, pet. dism'd).   Under Texas law, a person can be found to be a "sexually violent predator" if the person: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence."   *In re Commitment of Gomez*, 535 S.W.3d at 919.

Vela's Texas crimes constitute sexually violent offenses.   *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(8)(A), 841.003(b)(1); *see also In re Commitment of Stonecipher*, No. 14-18-00143-CV, 2019 WL 1119780, at *1 (Tex. App.—Houston [14th Dist.] Mar. 12, 2019, no pet.) (mem. op.).   A "[b]ehavioral abnormality" is "a congenital

or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." TEX. HEALTH & SAFETY CODE ANN. § 841.002(2).

## C. Evidence

There were two witnesses during the trial: the State's expert, Darrel Turner, Ph.D., and Vela. Dr. Turner is a forensic psychologist who has conducted approximately 150 evaluations of sexual offenders in Texas and Louisiana in the state and federal criminal justice systems. To prepare for his testimony, Dr. Turner was furnished with records related to Vela's criminal, medical, penal and institutional history, as well as Vela's deposition in this case. Dr. Turner interviewed Vela for approximately two hours and performed psychological testing on him.

Dr. Turner testified that Vela suffers from a behavior abnormality that makes him likely to engage in sexually violent offenses. According to Dr. Turner, the two biggest factors in determining the risk of reoffending sexually are antisociality and sexual deviance. Dr. Turner testified that Vela is sexually deviant primarily based upon his attraction to prepubescent male children and that Vela met the criteria established by the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) criteria for sexual deviance for pedophilia. Pedophilia is a condition that affects a person's emotional or volitional capabilities. Dr. Turner further testified that Vela's history of offenses, including sexual offenses, indicates a pattern of inability to control his behavior. Vela has never successfully completed parole or probation before committing another offense and has been incarcerated most of his adult life.

3

Dr. Turner also diagnosed Vela with antisocial personality disorder from the DSM-5. He described someone with that disorder as "an individual that basically sees themselves as quite entitled, and as deserving of essentially whatever they want." He further described the personality type and risk factor as follows:

> A willingness to hurt other people. A willingness to con and manipulate other people and lie. A lack of empathy; so unable to put yourselves in another person's shoes. Disregard for authority. Trouble controlling behavior. All of these things are features of antisocial personality disorder. And the more antisocial an individual is, the more fuel they have to act on sexually deviant interests. So it is significant that he's diagnosed with antisocial personality disorder. And I do think that's one of the things that makes up his behavioral abnormality.

Vela's criminal history began when he was a juvenile. Vela admitted torturing animals by lighting cats on fire. While in prison, Vela had difficulty controlling his behavior and had forty-two disciplinary infractions during his most recent incarceration; nineteen of them were major. One of the major disciplinary offenses was a sexual offense, masturbating in front of a female guard. She told him to stop, but he did not. Several other infractions were violent, including stabbing another inmate sixteen times and physically assaulting a guard. The prison offenses speak to Vela's antisociality, according to Dr. Turner. Vela was housed in administrative segregation for twelve years because of his membership in a prison gang, which was related to the stabbing incident. In 2014, Vela renounced his prison gang ties and was placed back into the ordinary prison population.

According to Dr. Turner, the combination of Vela's sexual deviance and antisociality creates an exponentially higher risk of reoffending than either alone. Vela is also borderline in his intellectual functioning and was diagnosed with alcohol use

disorder, severe, but is in full remission due to Vela's controlled prison setting. Vela's intellectual functioning has no impact on his risk of reoffending, other than it may affect his ability to gain benefit from therapy. Dr. Turner reviewed Vela's progress in his sex offender therapy and is concerned that Vela is not making any progress and very concerned that group members are calling Vela out on his lack of progress. Vela continues to minimize his offenses and minimize the effect of his actions on others.

Dr. Turner testified that he also relied on testing, the Static-99R and the PCL-R which provide insight into his risk of reoffending. The PCL-R measures psychopathic characteristics on a scale from zero to forty. A person who is a psychopath is very manipulative, lacks empathy, has a callousness towards others and lives an impulsive, irresponsible lifestyle. According to Dr. Turner, a psychopathic personality often exhibits a lot of criminal activity, early behavioral problems, and is willing to victimize others for his own gain. The research has shown a high correlation between psychopathy and the risk of reoffending. Dr. Turner scored Vela at twenty-eight, which places him in a range of high degree of psychopathic traits. An average inmate scores twenty-two to twenty-three.

The Static-99R looked at studies of sex offenders and compiled characteristics of sex offenders who re-offended, with the highest score of twelve. The average sex offender score is a two to three, but Dr. Turner scored Vela at six which indicates to Dr. Turner that Vela is at a substantial risk of reoffending. An offender's support system on release is considered. Vela has a very limited support system. Vela's age is a protective factor; he will be at least fifty-five years old when he is released and studies show the rates of reoffending go down after age fifty. Vela has hepatitis C and he now

uses a walker. Additional factors on scoring included prior offenses.

Vela admitted to Dr. Turner he would have a hard time not touching a child if he was alone with a child and has also expressed a desire to work with children after he get out of prison. He explained that he would have safeguards to make certain he was not alone with children by having security guards. Dr. Turner found Vela's admission and his desire to work with children to be additional risk factors.

## A. The 1980 Offenses

According to Dr. Turner, the details of Vela's sexual offenses are significant in determining whether Vela has a behavioral abnormality. The two male children against whom Vela first offended were acquaintances aged six and seven. Vela was eighteen years old. Vela took both boys into the restroom at a Denny's restaurant and tried to forcibly remove one boy's pants while the boy was trying to run out of the bathroom. Vela hit the boy to control him and maintained control over the second boy. Vela sat on the toilet and had the second boy sit on Vela's erect penis while penetrating the child's anus. Vela ejaculated. Vela then did same thing with the first boy, had him sit on Vela's erect penis while penetrating his anus, but Vela did not ejaculate. The boys later disclosed the assaults. When Vela has been questioned about this event, he has told various different stories. He initially told the police that the six-year old was a willing participant. According to Dr. Turner, male sex offenders who seek out male child victims reoffend at a higher rate than those who seek out female child victims. Moreover, the younger the victim, the higher the risk for reoffending. Dr. Turner also found the level of Vela's arousal for two resisting victims in a short period of time, in a public place, while Vela was on probation for a burglary offense, to be significant because it demonstrated a

6

great deal of impulsivity, risk-taking behavior, and antisociality. In 1981, Vela was placed on seven months of probation for these two sexual offenses, which he did not complete. Instead, he absconded to Texas.

## B. The 1995 Convictions

Vela was next convicted of sexual offenses in 1995 based upon two offenses that occurred in January and March of 1993. The January offense involved a twelve-year-old girl. Vela was thirty-one years old. The girl lived in Vela's neighborhood. Vela saw her slap her brother; Vela told her to go inside, he slapped her; made her go into a bedroom, laid her down, and undressed her. She wanted him to stop, but Vela reportedly told her it was OK because he was her godfather. Vela stuck something in her mouth because she was screaming. He laid her on her stomach and penetrated her anally. Someone knocked on the door and asked what was going on, and Vela put her in the bathroom. He threatened her family if she were to tell anyone. In some versions of the events, Vela gave her money. According to Dr. Turner, threats and gifts are efforts by perpetrators to prevent disclosure by victims and also to groom them to secure children they want to abuse. Grooming is considered serious manipulation and is a risk factor. Before this offense, Vela had been drinking with friends on the porch. According to Dr. Turner, this is more evidence of brazenness, indicating extreme sexual arousal given the child's screaming while there were people on the porch and his ability to maintain an erection under the circumstances. Vela gave differing accounts of the event at different times.

Vela's next sexual offense occurred in March 1993 against a male child who was eight-years-old, also from his neighborhood. Vela sent the boy inside, followed him into

7

the bathroom, and penetrated the child anally with his penis. Vela ejaculated. Vela then forced his penis into the boy's mouth while the boy was upset and crying. While they were in the bathroom and Vela was on the toilet, he placed his finger in the boy's anus as well. At the end of the assaults, the child had blood on his shorts and was crying. During this encounter with the child, Vela kicked and kneed the child. Vela also displayed a BB gun but portrayed it as a real gun and threatened the boy with harm to his family if he told anyone what happened. Dr. Turner described the display of the weapon as escalation and a further risk factor. During both offenses in 1993, Vela was on parole for another burglary offense, which speaks to Vela's difficulty controlling his behavior.

The State called Vela to testify at the civil commitment proceeding and cross-examined him in detail on his previous criminal history and the details of his sexual assaults on the two boys in 1980 and the girl and boy in 1993. As a result, the State elicited the details of the offenses directly from Vela before the jury.

## C. Vela's General Criminal History

Vela spent most of his adult life in jails, prisons, or on probation or parole. He had a long history of offenses. In 1978, Vela stole a purse; in 1979 he was arrested for being drunk. He was arrested in 1980 for burglary of a vehicle, being drunk and disorderly, and public intoxication. Vela left Arizona without permission in 1981 and moved to Corpus Christi. In 1981, he was arrested for public intoxication in Nueces County. He was arrested in 1982 for theft, failure to ID, and separately for burglary of a building to which he pleaded guilty. In 1983, Vela was arrested for burglary of a building a month after he was released on parole. He pleaded guilty and was sentenced to five years' imprisonment. When he was paroled in 1984, he was arrested less than a month

8

later for failure to ID, and the following month for possession of a controlled substance and for burglary of a building, public intoxication, and simple assault.   In 1986, Vela was arrested for criminal trespass and public intoxication.   In 1989, Vela was again arrested for public intoxication, burglary of a building, and failure to ID.   Vela pleaded guilty to burglary of a building as a habitual felony offender and was sentenced to twenty-five years imprisonment.   He was paroled in 1991.   Vela committed his third sex offense in January 1993.   In March 1993, he committed his fourth sex offense.

## II.   ADMISSION OF "BASIS" EVIDENCE PURSUANT TO RULE 705(D)

By his sole issue, Vela challenges the trial court's ruling that allowed the State's expert to go into the details of Vela's criminal acts against minor children to explain his opinions.   The trial court overruled Vela's objections that the evidence constituted hearsay and that its probative value was substantially outweighed by its unfairly prejudicial effect.   *See* TEX. R. EVID. 403, 802.

### A.   Standard of Review and Applicable Law

We review a trial court's ruling admitting or excluding evidence for an abuse of discretion.   *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam); *Gomez*, 535 S.W.3d at 927.   A trial court abuses its discretion when it acts without regard for any guiding rules or principles.   *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *In re Commitment of Mares*, 521 S.W.3d 64, 69 (Tex. App.—San Antonio 2017, pet. denied).

Rule 705 provides that, "Unless the court orders otherwise, an expert may state an opinion—and give the reasons for it—without first testifying to the underlying facts or data. But the expert may be required to disclose those facts or data on cross-

9

examination." TEX. R. EVID. 705(a). However,

> [i]f the underlying facts or data would otherwise be inadmissible, the proponent of the opinion may not disclose them to the jury if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect. If the court allows the proponent to disclose those facts or data the court must, upon timely request, restrict the evidence to its proper scope and instruct the jury accordingly.

*Id.* R. 705(d).

"Evidence is unfairly prejudicial when it has an undue tendency to suggest that a decision be made on an improper basis, commonly, but not necessarily, an emotional one." *In re Commitment of Anderson*, 392 S.W.3d 878, 882 (Tex. App.—Beaumont 2013, pet. denied). Factors that should be considered include the probative value of the evidence, the potential of the evidence to impress the jury in some irrational way, the time needed to develop the evidence, and the proponent's need for the evidence. *Id.*

## B. Basis Evidence

When Dr. Turner first began testifying about the details of Vela's 1980 sexual assaults on the two boys, defense counsel objected on hearsay, Rule 403, and Rule 705(d) grounds. TEX. R. EVID. 403, 705, 802. The trial court overruled the objections but granted Vela's counsel a running objection on Rule 705 grounds. The trial court gave the requested limiting instruction to the jury. *See id.* 705(d).

In these kinds of cases, our sister courts have determined that experts may disclose otherwise inadmissible data regarding a defendant's prior offenses as part of the basis for the expert's opinions. *See In re Commitment of Day*, 342 S.W.3d 193, 197–99 (Tex. App.—Beaumont 2011, pet. denied); *see also In re Commitment of Cain*, No. 02-18-00043-CV, 2018 WL 5993335, at *2 (Tex. App.—Fort Worth Nov. 15, 2018, no pet.)

(mem. op.); *In re Commitment of Clemons*, No. 09-15-00488-CV, 2016 WL 7323298, at *8 (Tex. App.—Beaumont Dec. 15, 2016, pet. denied) (mem. op.). We have previously found such testimony admissible in a memorandum opinion. *In re Flores,* No. 13-17-00258-CV, 2018 WL 1755876, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 1, 2018, no pet.) (mem. op.).

Although the details of each sexual offense was clearly disturbing and prejudicial, it was those details, according to Dr. Turner, that furnished him with the information he needed to form an opinion regarding whether Vela had a behavior abnormality. Dr. Turner connected Vela's choice of victim, acquaintance or stranger status, age, the use of a relatively public location, the ease of discovery, Vela's use of threats, his use of intoxicants, his level of arousal, and the impulsivity of Vela's act to explain his assessment of Vela's behavioral abnormality and his risk assessment. A review of other cases indicates that other experts in these kinds of cases similarly rely on these kinds of details to reach their opinions regarding whether a particular defendant has a behavioral abnormality as defined by the statute. *See Day*, 342 S.W.3d at 197–99; *see also Cain*, 2018 WL 5993335, at *2; *Flores,* 2018 WL 1755876, at *4; *Clemons*, 2016 WL 7323298, at *8. Moreover, the State is required to establish that the defendant has a behavior abnormality which cannot be done simply by reciting the fact of his convictions. Thus, it had need for at least some of the detail from the offenses for the expert to form his opinion and explain the basis for the test scoring.

Under these circumstances, we cannot agree that the evidence was so unfairly prejudicial as to substantially outweigh its probative value. *See Day*, 342 S.W.3d at 199. Accordingly, we conclude that the trial court did not abuse its discretion in allowing the

State's expert to explain the offense details that were contained in the records he reviewed and that were discussed by Vela in his testimony.

Vela's sole issue is overruled.

### III.  CONCLUSION

We affirm the judgment of the trial court.


GINA M. BENAVIDES,
Justice


Delivered and filed the
12th day of December, 2019.