# NO. 12-23-00006-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN RE* | § | *APPEAL FROM THE 145TH* |
| *COMMITMENT OF* | § | *JUDICIAL DISTRICT COURT* |
| *TRAVIS DWAYNE SKEETERS* | § | *NACOGDOCHES COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Travis Dwayne Skeeters appeals his civil commitment following the trial court's adjudication that he is a sexually violent predator. In his sole issue, Skeeters challenges the factual sufficiency of the evidence supporting the trial court's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. We affirm.

## Background

On April 19, 2022, the State filed a petition seeking to have Skeeters adjudicated a sexually violent predator and committed for treatment and supervision pursuant to Chapter 841 of the Texas Health and Safety Code (the SVP Act). A jury found beyond a reasonable doubt that Skeeters is a sexually violent predator, and the trial court signed a final judgment and order of civil commitment. Skeeters filed a motion for new trial, and the trial court signed an order denying the motion. This appeal followed.

## Factual Sufficiency

In his sole issue, Appellant challenges the factual sufficiency of the evidence supporting the trial court's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

**The Evidence**

Clinical and forensic psychologist Dr. Kyle Clayton testified that he has performed thirty-four behavioral abnormality evaluations, and he found that the person has a behavioral abnormality twenty times. Dr. Clayton testified that in arriving at his opinion, he uses and relies upon the principles of forensic psychology. The first step of Dr. Clayton's evaluation process is reviewing the initial set of referral records from the party who retained him, and he then schedules a face-to-face evaluation with the respondent. Dr. Clayton generally reviews the person's criminal history, offense reports, witness statements, the suspect's statements, prison records, and "any medical or psychiatric records that are available[.]" Dr. Clayton testified that he also reviewed Skeeters's deposition. According to Dr. Clayton, considering "all aspects" of the person is important when analyzing his risk for sexually reoffending. After meeting with the person and conducting testing, Dr. Clayton forms an opinion.

Dr. Clayton testified that risk factors for sexually reoffending fall into two categories: (1) static factors, which are historical and do not change, and (2) dynamic factors, which "can change in the present moment and [in the] future." A protective factor is something that tends to reduce a person's risk for sexually reoffending. According to Dr. Clayton, Skeeters's history of offending is sexually deviant, and the presence of sexual deviance is a risk factor. He explained that he also considered Skeeters's non-sexual criminal history because individuals who have a non-sexual criminal history tend to reoffend at a higher rate. Skeeters's non-sexual criminal history includes public intoxication, driving while intoxicated, resisting arrest, and failure to appear.

Due to COVID-19 precautions, Dr. Clayton conducted his face-to-face evaluation of Skeeters by video teleconference, and the evaluation lasted approximately three hours. Skeeters related to Dr. Clayton that his childhood and family life were chaotic, and he was physically abused and neglected. Skeeters's first sexually violent offense occurred in Wisconsin in 1985, when he penetrated fifteen-year-old P.S.'s sexual organ with his sexual organ after meeting her in a bar. Skeeters told Dr. Clayton that P.S. agreed to have sex with him, and that she looked seventeen or eighteen years old. Skeeters told P.S. that it would not help for her to tell anyone because one of his family members works in law enforcement. Nevertheless, P.S. made an outcry and law enforcement became involved. According to Dr. Clayton, risk factors regarding this offense include that P.S. was a stranger, P.S. was a child, Skeeters was intoxicated, and Skeeters used both

physical and psychological force. Skeeters was convicted, received a two-year sentence, and was paroled after serving approximately one year.

Skeeters's next sexually violent offense occurred in Texas in 1988, when he digitally penetrated seven-year-old S.G.'s vagina, exposed himself to her, asked her to touch his sexual organ, and spanked her when she refused to do so. Dr. Clayton explained that risk factors include that the offense involved both contact and non-contact behavior, Skeeters was intoxicated, and S.G. was a prepubescent child. Skeeters told Dr. Clayton that he did not intentionally expose himself to S.G., did not digitally penetrate her or have any kind of sexual contact with her, and did not request sexual contact from her. Skeeters was convicted of indecency with a child and sentenced to five years of confinement.

In 2002, Skeeters sexually assaulted his nine-year-old biological daughter, T.S. When T.S. outcried, she reported that Skeeters penetrated her anus with his sexual organ, exposed himself to her, and asked her to touch his sexual organ. T.S. reported that Skeeters told her to be quiet and that what happened "would be their little secret." When the offense against T.S. occurred, Skeeters was under the influence of both alcohol and drugs. Skeeters told Dr. Clayton that he did not recall the incident. Dr. Clayton explained that despite being caught and punished twice previously, Skeeters reoffended, and his reoffending is a risk factor. Dr. Clayton testified that the fact the victim was a child makes the offense sexually deviant, which is a risk factor, and he identified Skeeters's use of physical and psychological coercion or threats as an additional risk factor. Skeeters was convicted of indecency with a child and aggravated sexual assault and sentenced to twenty-five years of confinement for each offense against T.S., and his sentences ran concurrently.

Dr. Clayton diagnosed Skeeters with the non-exclusive form of pedophilia, as well as substance abuse disorders and adult antisocial behavior. According to Dr. Clayton, the records he reviewed indicate that Skeeters also sexually offended against multiple male prepubescent family members, and having male victims is an additional risk factor. Dr. Clayton testified that Skeeters's admitted problems with past social and romantic relationships are a risk factor. Dr. Clayton testified that although the offenses against male victims did not result in convictions, those offenses are nevertheless relevant when scoring the Static-99R actuarial instrument, which predicts a person's risk for sexually reoffending. According to Dr. Clayton, pedophilic disorder does not go away with the passage of time; rather, it "tends to persist over a person's lifetime."

Dr. Clayton testified that Skeeters scored a four on the Static-99R, which "falls in the above-average risk category." Dr. Clayton concluded that Skeeters has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence, and he explained that pedophilic disorder affects emotional and volitional capacity and increases the likelihood of committing a sexually violent act. Moreover, Dr. Clayton opined that Skeeters is a menace to another person's health and safety because he is at an increased risk for sexually reoffending in the community. A diagnosis of pedophilic disorder alone does not equate to a behavioral abnormality that makes a person likely to commit a predatory act of sexual violence; rather, Dr. Clayton explained that he considers a pattern of offending and reoffending. Dr. Clayton testified that possessing antisocial traits is also a risk for reoffending. Dr. Clayton explained that Skeeters scored in the moderate range on the Hare Psychopathy Checklist, which indicates that he has some psychopathic traits but is not a psychopath.

According to Dr. Clayton, although Skeeters adjusted well to incarceration, he nevertheless has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence because (1) he lacked access to minors while incarcerated and (2) although his risk for sexually acting out in prison is low, it is "very high" in the community. Dr. Clayton explained that Skeeters "has a persistent history of sexually acting out and sexually offending despite being detected, punished for these behaviors on numerous occasions when he's out in the free world, in the community." Dr. Clayton testified that Skeeters's participation in sex offender treatment is a positive factor, and completion of the program would be considered a protective factor.

Skeeters testified that he dropped out of school to help provide for his family, so he only completed the eighth grade. Skeeters began consuming alcohol at an early age, and he eventually began using marijuana and cocaine. He has not received treatment for substance abuse but has attended Alcoholics Anonymous. Skeeters explained that he has maintained his sobriety throughout his incarceration. Skeeters admitted having sexual intercourse with P.S., but maintained that it was consensual. Skeeters testified that he accidentally exposed himself to S.G., and he denied digitally penetrating her sexual organ or asking her to touch his sexual organ. Skeeters explained that he has no recollection of the offense against T.S., but he stated, "if she said I did it, I did it."

Skeeters testified that he is participating in the sex offender treatment program in prison, and he has learned to avoid his triggers, such as alcohol and drugs. Skeeters explained that he

4

would be released from prison upon completing the sex offender treatment program. When asked who is to blame for his sexual offense convictions, Skeeters stated, "[m]y mother." Skeeters explained that he does not believe he is at risk of reoffending sexually in the future, and he denied feeling sexual urges toward males or children. Skeeters is certified as a forklift operator, and he hopes to work in that vocation upon his release from prison.

**Standard of Review and Applicable Law**

In reviewing the factual sufficiency of the evidence, we must decide "whether, on the entire record, a reasonable factfinder could find beyond a reasonable doubt that the defendant is" a sexually violent predator. ***In re Commitment of Stoddard***, 619 S.W.3d 665, 668 (Tex. 2020). "[T]he appellate court may not usurp the jury's role of determining credibility of the witnesses and the weight to be given their testimony . . . [and] must presume that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." ***Id***. "If the remaining evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true, the evidence is factually insufficient to support the verdict." ***Id***. We "may not ignore 'undisputed facts that do not support the finding' and must otherwise presume the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so." ***Id***. at 676 (quoting ***In re J.F.C.***, 96 S.W.3d 256, 266 (Tex. 2002)). In a factual sufficiency review, we consider whether the disputed evidence that a factfinder could not have resolved in favor of its ruling "is so significant that the factfinder could not have determined beyond a reasonable doubt that the statutory elements were met." ***Id***. We must weigh the evidence to determine "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." ***In re Commitment of Day***, 342 S.W.3d 193, 213 (Tex. App.—Beaumont 2011, pet. denied). It is the exclusive province of the jury to determine the weight and credibility to assign the evidence, and we do not substitute our judgment for the jury's. ***Stoddard***, 619 S.W.3d at 674; 677.

The SVP Act provides for the involuntary long-term supervision and treatment of sexually violent predators who meet specified statutory criteria. TEX. HEALTH & SAFETY CODE ANN. § 841.001 (West 2017); ***Stoddard***, 619 S.W.3d at 669. The State must prove beyond a reasonable doubt that a person is a "sexually violent predator." TEX. HEALTH & SAFETY CODE ANN. § 841.062 (West Supp. 2022). A person is a "sexually violent predator" if he (1) is a repeat sexually violent

offender and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a) (West 2017). A "behavioral abnormality" is a congenital or acquired condition that, by affecting the person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person. *Id*. § 841.002(2). "'Predatory act' means an act directed toward individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5). If, after a trial, a trial court or jury determines that a person is a sexually violent predator, the judge must commit him for treatment and supervision. *Id*. § 841.081(a) (West 2017).

**Analysis**

As mentioned above, Skeeters contends the evidence is factually insufficient to support the finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.[1] Skeeters argues that he does not fit into the "'small but extremely dangerous group of sexually violent predators' for which the Texas Legislature intended the SVP Act." According to Skeeters, Dr. Clayton could not identify "anything specific" to show that he "still has issues regarding emotional or volitional capacity" or that he "currently has serious difficulty controlling his behavior." In addition, Skeeters maintains that although serious difficulty in controlling behavior is not a separate element that the State must prove, "it is part and parcel of proving that [he] has a behavioral abnormality." Skeeters points out that Dr. Clayton did not diagnose him with antisocial personality disorder, and he asserts that he does not meet the criteria for a diagnosis of pedophilia. Moreover, Skeeters argues that previous offenses or convictions are not, standing alone, sufficient to support a finding of behavioral abnormality.

In enacting the SVP Act, the Legislature found that:

> a small but extremely dangerous group of sexually violent predators exists and . . . those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory acts of sexual violence. . . . Thus, the legislature finds that a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state.

---

[1] Skeeters does not challenge the sufficiency of the evidence supporting the finding that he is a repeat sexually violent offender.

TEX. HEALTH & SAFETY CODE ANN. § 841.001; *see also* ***In re Commitment of Fisher***, 164 S.W.3d 637, 639-40 (Tex. 2005). Because the legislative findings from Section 841.001 are not part of the SVP Act's definition of "sexually violent predator," the State is not required to prove that a person is part of "a small but extremely dangerous group" to civilly commit him as a sexually violent predator. ***Stoddard***, 619 S.W.3d at 677; ***In re Commitment of Gunter***, No. 11-20-00253-CV, 2022 WL 3902735, at *5 (Tex. App.—Eastland Aug. 31, 2022, no pet.) (mem. op.) (rejecting appellant's claim that the evidence was insufficient to prove appellant's membership in the "small but extremely dangerous group of sexually violent predators" mentioned in the SVP Act's legislative findings); ***In re Commitment of Stratton***, 637 S.W.3d 870, 887 (Tex. App.—Eastland 2021, no pet.) (holding that legislative findings are not part of the statutory requirements for commitment under the SVP Act); *see also* TEX. HEALTH & SAFETY CODE ANN. 841.003(a) (statutory definition of "sexually violent predator"). Additionally, a determination of serious difficulty with controlling behavior is implicit in a finding that a person is a sexually violent predator. ***In re Commitment of Browning***, 113 S.W.3d 851, 862-63 (Tex. App.—Austin 2003, pet. denied) (holding that jury instruction regarding serious difficulty controlling behavior was not required because determination that person is a sexually violent predator constitutes implicit finding of serious difficulty controlling behavior). In other words, "[t]he SVP Act's definition of 'behavioral abnormality' adequately subsumes the inquiry." ***In re Commitment of Dever***, 521 S.W.3d 84, 87 (Tex. App.—Fort Worth 2017, no pet.).

The SVP Act's definition of "behavioral abnormality" does not require a diagnosis of a particular disorder from the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-V). *Id.* (noting that the SVP Act is silent as to mental diagnoses and the DSM-V, and the SVP Act "merely establishes *what* the State must prove, not *how* the State must go about proving it."). Although a particular medical diagnosis may inform an assessment of whether a person has a behavioral abnormality, "the principal issue in a commitment proceeding is not the person's mental health but whether he is predisposed to sexually violent conduct." *Id.*

The jury heard evidence that Skeeters was convicted of second-degree sexual assault in Wisconsin, as well as aggravated sexual assault and two charges of indecency with a child in Texas. Dr. Clayton testified that the victim of Skeeters's aggravated sexual assault was his prepubescent daughter. Additionally, the jury heard evidence that Skeeters sexually offended against multiple male victims, but those allegations were unadjudicated. The jury also heard Dr.

Clayton testify that Skeeters's risk factors include sexual deviance, his non-sexual criminal history, his abuse of children, the fact that he sexually reoffended, his use of physical and psychological coercion, offending against male victims, and his use of alcohol and drugs. Dr. Clayton diagnosed Skeeters with the non-exclusive form of pedophilia, adult antisocial behavior, and substance abuse disorders. Moreover, the jury heard testimony that Skeeters scored in the above-average risk category on the Static-99R, possesses antisocial traits, and has some psychopathic traits but is not a psychopath. The jury further heard Dr. Clayton testify that Skeeters has a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence, and Dr. Clayton noted that Skeeters lacked access to minors while he was incarcerated and opined that his risk for sexually offending in the community is very high.

The jury heard Skeeters testify that he attended Alcoholics Anonymous and maintained his sobriety during his incarceration. In addition, the jury heard Skeeters testify that he had consensual sexual intercourse with P.S., accidentally exposed himself to S.G. but did not penetrate her sexual organ, and did not recall the offense against T.S. The jury also heard Skeeters testify that he participated in the sex offender treatment program, which Clayton testified is a positive factor and would be a protective factor upon Skeeters's successful completion of the program. Moreover, the jury heard Skeeters testify that he does not believe he is at risk of reoffending sexually, and he denied having sexual urges toward males or children.

After reviewing the entire record, we cannot conclude that the evidence contrary to the jury's finding that Skeeters has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence was so significant that the factfinder could not have determined beyond a reasonable doubt that its finding was true. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.002(2), 841.003; *Stoddard*, 619 S.W.3d at 668. We further conclude that the verdict does not reflect a risk of injustice that would compel ordering a new trial. *See Day*, 342 S.W.3d at 213. Therefore, we conclude that the evidence is factually sufficient to support the jury's finding and the trial court's order of civil commitment. *See Stoddard*, 619 S.W.3d at 678. Accordingly, we overrule issue one.

## DISPOSITION

Having overruled Skeeters's sole issue, we ***affirm*** the trial court's judgment and order of civil commitment.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered September 20, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### SEPTEMBER 20, 2023

### NO. 12-23-00006-CV

### IN RE COMMITMENT OF TRAVIS DWAYNE SKEETERS

Appeal from the 145th District Court
of Nacogdoches County, Texas (Tr.Ct.No. C2237608)

    THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this Court that there was no error in the judgment.

    It is therefore ORDERED, ADJUDGED and DECREED that the judgment and order of civil commitment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

    James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*